Ernestine **DAVIS** and Dan O.
Davis, Appellants,

v.

Nancy **ABBUHL**, Appellee.

No. 82–738.

District of Columbia Court of Appeals.

Argued Feb. 8, 1983.

Decided April 18, 1983.*

---

* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment on April 18, 1983. It is now being published by direction of the court.

Betty S. Walker, with whom Charles J. Baron, Washington, D.C., was on brief, for appellants.

Susan E. Greenlief, with whom Robert L. Ellis, Arlington, Va., was on brief, for appellee.

Before BELSON and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.

TERRY, Associate Judge:

Two issues are presented in this appeal. We must decide, first, whether the trial court abused its discretion when it granted appellee's motion for new trial or remittitur based on the excessiveness of the verdict, and second, whether the court abused its discretion when it granted appellee's motion for costs under Super.Ct.Civ.R. 68. Finding no abuse of discretion in either instance, we affirm.

I

Appellants, mother and son, while driving west on Military Road, N.W., on June 14, 1978, were struck by appellee's car when she failed to obey a stop sign at an intersection. The following evidence was introduced at the first trial on the issue of damages.

Dr. John W. Fitzhugh, a specialist in internal medicine, testified that when he examined appellant Ernestine Davis one week after the accident, she complained of pain in her chest, neck, and back. Mrs. Davis visited Doctor Fitzhugh nine more times and "received analgesics, muscle relaxants, and anti-inflammatory agents ... according to the symptoms she was displaying at the time of her visits ...." Her condition gradually improved, and at the last visit on October 10, 1978, Dr. Fitzhugh found her asymptomatic. The total amount charged for these treatments was $380. She also missed a month of work, losing approximately $400 in wages.

About seventeen months later, on March 17, 1980, Mrs. Davis visited Dr. Fitzhugh again and complained of pain in her lower back. She also told the doctor that this pain at times caused her to lose control of her legs and fall to the ground. Dr. Fitzhugh placed her on muscle relaxant and anti-inflammatory medication and warned her that if this treatment was not effective, she would have to consult a neurologist. Dr. Fitzhugh stated that although Mrs. Davis was in need of treatment, he could not predict its duration.

Ernestine Davis testified that for three days following her release from Sibley Memorial Hospital, where she received emergency treatment, she "was hurting so bad [that she] couldn't sleep," so she returned to the hospital, where she was given pain pills and referred to Dr. Fitzhugh. Mrs. Davis denied being well at the time she stopped the treatments with Dr. Fitzhugh in October 1978. She explained that she continued working despite the pain because she was sending her son to college and that she used aspirin and hot water baths to combat her pain.

Dr. Fitzhugh also treated appellant Dan Davis, who had been a passenger in his mother's automobile when it was struck by appellee's car. Mr. Davis complained of pain in the left side of his body and his neck. He received treatments costing a total of $240 until October 17, 1978, when Dr. Fitzhugh found him asymptomatic. In addition to the medical expenses resulting from his treatment by Dr. Fitzhugh, Mr. Davis received a $144 bill from Sibley Hospital. He did not suffer any continuing pain, nor did he lose any wages as a result of the accident.

The jury returned a verdict in favor of appellants in the amount of $39,000.[1] Appellee filed a motion for new trial or remittitur, which the court granted, conditioning the new trial on appellants' refusal of the remittitur, which it set at $17,000.[2] Appellants rejected the remittitur, and the jury in the second trial returned a verdict in their favor in the amount of $10,500.[3]

## II

It is well settled that a trial court's decision to grant or deny a motion for a new trial based on the excessiveness of the verdict will not be reversed unless an abuse of discretion is shown. *Safeway Stores, Inc. v. Kelly,* 448 A.2d 856, 864 (D.C.1982); *Wingfield v. Peoples Drug Store, Inc.,* 379 A.2d 685, 687 (D.C.1977); *D.C. Transit System, Inc. v. Freeman,* 333 A.2d 61, 62 (D.C. 1975). As we remarked in *May Department Stores Co. v. Devercelli,* 314 A.2d 767, 775 (D.C.1973):

Each case in this area necessarily rises or falls on its own facts and the trial court in ruling on the question of whether or not a jury verdict is excessive must determine on the totality of facts before it whether it was the result of passion, prejudice or mistake.[4]

1. Ernestine Davis was awarded $35,000 and Dan Davis $4,000.

2. The court reduced the verdict for Ernestine Davis to $15,000 and that for Dan Davis to $2,000.

3. Ernestine Davis was awarded $10,000 and Dan Davis $500.

4. In this jurisdiction, the standard by which to gauge whether a verdict has been excessive has also been expressed in terms of whether the verdict was "beyond all reason, or ... [was] so great as to shock the conscience," *Williams v. Steuart Motor Co.,* 161 U.S.App.D.C. 155, 166, 494 F.2d 1074, 1085 (1974), quoting *Frank v. Atlantic Greyhound Corp.,* 172 F.Supp. 190, 191 (D.D.C.1959), or "so inordinately large as obvi-

Ernestine Davis presented evidence of only $880 in special damages, consisting of (1) $380 worth of medical treatments from Dr. Fitzhugh, (2) a $100 bill for emergency treatment at Sibley Hospital, and (3) one month's lost wages amounting to $400. She also testified, however, that ever since the accident, she had been in pain the "majority of the time." In light of this testimony, she contends that an award of $35,000 in damages was not excessive. It appears from the verdict that the jury intended to compensate appellant for her pain and suffering from the time of the accident up to the time of trial by awarding her $34,120. After thoroughly reviewing the record, and recognizing that a trial court is in the best position to determine whether a verdict is the result of prejudice, passion, or mistake, we hold that the court in the instant case did not abuse its discretion in concluding that the verdict for pain and suffering was disproportionate to the evidence of special damages, and that it therefore did not commit error in granting appellee's motion for new trial when appellant refused to accept the remittitur.[5]

Dan Davis' evidence of special damages consisted of (1) $240 worth of medical treatments from Dr. Fitzhugh, and (2) a $144 bill for emergency treatment at Sibley Hospital, a total of $384. Thus in his case the jury must have intended to award him $4,616 for his pain and suffering during the four-month period following the accident, since after that time Dr. Fitzhugh determined that he was asymptomatic, and Mr. Davis did not testify that he suffered any further pain. As with Ernestine Davis, we find no abuse of discretion in the granting of appellee's motion for new trial after appellant Dan Davis' refusal to accept the remittitur.

### III

Prior to the start of the second trial, appellee made an offer of judgment to appellants under Super.Ct.Civ.R. 68 in the amount of $17,000, which appellants rejected. After the jury returned a verdict for $10,500, appellee filed a motion to compel costs under Rule 68.

Appellants argue that the court erred in granting that motion. Specifically, they maintain that Rule 68 should not apply "in a case such as this where the plaintiffs have had some indication by way of a jury verdict that their case is worth substantially more than the amounts contained in the defendant's offer of judgment." Additionally, appellants contend that since they "indicated they would appeal the issue of damages ... the awarding of costs was premature ...." These arguments have no merit.

Super.Ct.Civ.R. 68, like its federal counterpart, Fed.R.Civ.P. 68,[6] provides in pertinent part:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued.... An

ously to exceed the maximum limit of reasonable range within which the jury [might] properly operate," *Graling v. Reilly,* 214 F.Supp. 234, 235 (D.D.C.1963). *See Phillips v. District of Columbia,* 458 A.2d 722, 724 (D.C.1983).

5. Appellant contends that, assuming *arguendo* that the jury considered the permanency of her injury in making its award, it was not improper for the jury to do so under *American Marietta Co. v. Griffin,* 203 A.2d 710 (D.C.1964). Appellant misreads *Griffin.* In that case, we held that *absent* medical testimony that injuries are temporary, a plaintiff's testimony concerning continuing pain and suffering will be sufficient to send the issue of permanency to the jury. *Id.* at 712. In the instant case, Dr. Fitzhugh testified that although appellant required medical treatment, he could not say how long such

treatment would be needed. As a result, the court did not instruct the jury on permanency. Had appellant sought recovery for permanent injuries, expert medical testimony would have been required. *Jones v. Miller,* 290 A.2d 587, 590 (D.C.1972); *accord, Early v. Wagner,* 391 A.2d 252, 254 (D.C.1978). In this case, the period for which the jury could recompense appellant for pain and suffering ran from the date of the accident to the date of trial and not beyond. *See generally Garner v. Sam S. Bevard & Sons,* 342 A.2d 52 (D.C.1975).

6. Since the rules are identical, we may look to federal court decisions as persuasive authority in interpreting our rule. *Vale Properties, Ltd. v. Canterbury Tales, Inc.,* 431 A.2d 11, 13 n. 3 (D.C.1981).

offer not accepted shall be deemed withdrawn .... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer .... When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

"The purpose of Rule 68 is to encourage settlements and put an end to litigation, and not to form a basis for further controversy between the parties." *Panos v. Nefflen,* 205 A.2d 600, 602 (D.C.1964). As the Supreme Court recently pointed out, "Rule 68 provides an additional inducement to settle in those cases in which there is a strong probability that plaintiff will obtain a judgment but the amount of recovery is uncertain." *Delta Air Lines, Inc. v. August,* 450 U.S. 346, 352, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981).

The instant case presents a typical application of the rule. Appellee made an offer of judgment, appellants rejected it, and the "judgment finally obtained ... [was] not more favorable than the offer ...." We therefore conclude that the trial court's decision to award costs under Rule 68 was not an abuse of discretion.[7]

*Affirmed.*

---

7. The court granted the portion of the motion relating to the $725 fee paid to an expert witness, but denied that portion which requested attorney's fees of $2,849.