**Anna May WOOD**

v.

**Rocky Alan DAY and Giant Food, Inc., Appellants.**

No. 87–7231.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 15, 1988.

Decided Oct. 28, 1988.

Jayson L. Spiegel, with whom Dwight D. Murray and David P. Durbin, Washington, D.C., were on the brief, for appellants. Mary Ann Snow, Washington, D.C., also entered an appearance for appellants.

H. Vincent McKnight, Jr., Washington, D.C., with whom James M. Hanny, Landover, Md., was on the brief, for appellee.

Before WILLIAMS, D.H. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This appeal is from a judgment entered on a jury's verdict in a case of negligence arising from a rear-end collision. Because liability was admitted by defendants, Rocky Alan Day and Giant Food, Inc. (collectively "appellants"), the sole issue at trial was damages. The jury awarded plaintiff Anna May Wood ("Wood" or "appellee") damages of $100,000 via a general verdict. Appellants argue that the verdict was based on erroneous instructions allowing recovery for elements of damages not supported by the evidence. We agree, vacate the award, and remand for further proceedings.

## FACTUAL BACKGROUND

The facts, considered in the light most favorable to the appellee, are as follows:

Appellee, a woman of approximately fifty-two years of age, had been living asymptomatically with a degenerative spinal condition known as spondylolisthesis, the breaking down or slipping of the vertebral column. On November 17, 1983, a taxi cab occupied by Ms. Wood was struck from behind by a tractor-trailer driven by appellant Day, an employee of the trailer's owner, appellant Giant Food, Inc. Ms. Wood was taken from the scene to Prince George's General Hospital, where she was examined, x-rayed, and released shortly thereafter.

Beginning on November 28, 1983, and over the next three years, Ms. Wood made 22 visits to an orthopedist, Dr. Rida Azer. Dr. Azer initially recommended physical therapy and prescribed medication, opining that further testing would be required if her condition did not improve. For approximately three years, Ms. Wood underwent numerous tests and treatments, including regular participation in physical therapy. Over the years, the frequency of her consultations and treatment tapered off, so that by May 1987, Ms. Wood had seen Dr. Azer only twice in the preceding eleven months, and had been advised by him to cease therapy.

At trial Ms. Wood testified that prior to the accident she had been a cashier at a department store for more than twenty years, and that, though limited to "light duties" after the accident, she remained employed by the company in an associated store. Ms. Wood testified that she was in

constant pain and that her range of activities was considerably diminished. Although appellee introduced no evidence as to her pre-accident earnings, she testified that her new position paid $6.80 per hour.

The evidence at trial established that Ms. Wood had sustained permanent injury to the lumbosacral spine and a narrowing of the intervertebral disc space as a result of the accident, causing further spinal degeneration. Though Dr. Azer testified that Ms. Wood's condition worsened from a grade one to a grade two spondylolisthesis within two weeks of the accident, appellants' expert witness, Dr. Edward Anthony Rankin, testified that Ms. Wood's preexisting vertebral condition eventually would have become symptomatic had the accident not occurred.

Dr. Azer testified that in his opinion Ms. Wood's injury was permanent, would result in continued spinal deterioration, and would permanently restrict her ability to engage in a range of endeavors, including strenuous activity and prolonged sitting or standing, limitations "that she will have to abide by for the rest of her life." Dr. Azer also testified that while surgery would normally be the optimal course of action, he did not believe it was appropriate for Ms. Wood because of her significant heart and weight problems. For these reasons, Dr. Azer was "very reluctant" to recommend surgery, as Ms. Wood could "end up by having a blood clot or a heart attack, or something." In his opinion, surgery should be "avoid[ed] as long as possible, until it becomes almost an emergency." Though Dr. Azer stated that Ms. Wood would need further medical attention, upon appellants' objection the District Court ruled that Dr. Azer was not able to render an opinion as to the likelihood of surgery with the requisite degree of certainty. Though the Court indicated its willingness to permit the introduction of evidence pertaining to prospective non-surgical medical attention, none was offered.

In its original charge, the Court instructed the jury over appellants' objection that "you should award such a sum as will reasonably and adequately compensate the plaintiff for any loss of earnings which you find that the plaintiff will probably suffer in the future." Appellants took exception to the instruction, arguing that the only evidence tending to show a loss of future earnings—that relating to a convalescence period following surgery—had been stricken. The Court disagreed, stating that "I heard something about having to go to the doctor."

During its deliberations, the jury inquired of the Court as follows: "Can we consider probable future medical costs related to Miss Wood's condition if we determine defendant is at fault?" Despite a previous statement by appellee's counsel that such expenses were no longer sought, and over appellants' objection, the District Court instructed the jury that "you may consider probable future medical expenses, if any, except that you may not consider the cost of surgery." The Court did so because, in its opinion, the jury (1) could "extrapolate" the number of visits Ms. Wood would make for treatment based on the frequency of her visits in the past; and (2) it could "infer" from the evidence regarding Ms. Wood's pain that a doctor "will be giving her aspirin or valium, or whatever."

Before trial, appellants stipulated that as of September 1986, Ms. Wood had accumulated $1,459.90 in lost wages, and medical bills totalling $6,199.13 as a result of the accident. By way of a general verdict, the jury awarded appellee $100,000. After appellants' motions for a new trial and for remittitur were denied, this appeal followed.

## ANALYSIS

■ The primary purpose of compensatory damages in personal injury cases "is to make the plaintiff whole." *Kassman v. American University*, 546 F.2d 1029, 1033 (D.C.Cir.1976). Accordingly, if properly proved at trial, both future medical expenses and loss of future earnings are recoverable. *Cf. District of Columbia v. Barriteau*, 399 A.2d 563, 567 (D.C.1979).

It is well established that notwithstanding the jury's broad discretion in awarding

damages, its award must be supported by substantial evidence. *Doe v. Binker*, 492 A.2d 857, 860 (D.C.1985). Damages may not be based on mere speculation or guesswork. *Eureka Invest. Corp., N.V. v. Chicago Title Ins. Co.*, 743 F.2d 932, 939 (D.C. Cir.1984); *Romer v. District of Columbia*, 449 A.2d 1097, 1100 (D.C.1982); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 250–51, 75 L.Ed. 544 (1931). Thus, "[w]hile damages are not required to be proven with mathematical certainty, there must be some reasonable basis on which to estimate damages." *Romer*, 449 A.2d at 1100 (citing *Designers of Georgetown, Inc. v. E.C. Keys & Sons*, 436 A.2d 1280, 1281 (D.C. 1981); *District Concrete Co. v. Bernstein Concrete Corp.*, 418 A.2d 1030, 1038 (D.C. 1980)).

And despite the jury's discretion, "[i]t is elementary that an instruction should not be given if there is no evidence to support it." *Ceco Corp. v. Coleman*, 441 A.2d 940, 949 (D.C.1982); *Kasmer v. Sternal*, 165 F.2d 624, 626 (D.C.Cir.1948). The evidence presented must be more than a "scintilla," *Doe*, 492 A.2d at 860, and, indeed, when recovery is sought for future consequences of a tort, damages are "available only if such consequences are reasonably certain. Unless there is nonspeculative evidence demonstrating that future suffering, additional medical expense, and loss of income will occur, the question should not be submitted to the jury." *Curry v. Giant Food Co.*, 522 A.2d 1283, 1291 (D.C.1987) (citing *American Marietta Co. v. Griffin*, 203 A.2d 710, 712 (D.C.1964); *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 119 (D.C.Cir.1982)). This Circuit has previously stated that damages for future consequences are recoverable only if plaintiff establishes that it is "more likely than not (a greater than 50% chance) that the projected consequence will occur." *Wilson*, 684 F.2d at 119. *See also Griffin*, 203 A.2d at 712.

■ While errors limited to individual components of an instruction must be viewed in context, and not in isolation, *Ceco Corp. v. Coleman*, 441 A.2d at 950, and

may be ignored if they are "immaterial" in light of the jury's verdict, 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2886, 290–91 (1973) ("Wright & Miller"), a reviewing court should not turn its back on significant errors that may have substantially prejudiced a party's rights. *Cf. Ceco*, 441 A.2d at 950; Wright & Miller, *supra*, at 291–92.

■ Appellee's pretrial and trial documents undeniably demonstrate an intention to recover for future medical expenses and loss of future earnings. The sole theory upon which such recoveries were predicated was the possibility of future surgery, and a concomitant convalescence period. When asked by the Court whether he intended to introduce evidence of loss of future earnings, appellee's counsel responded that "the doctor will testify that if the surgery is performed, [Ms. Wood] will be out of work for a six-month period of time. So there will be evidence of that." Likewise, the only evidence offered regarding future medical expenses was Dr. Azer's estimation of expenses associated with orthopedic surgery. However, the Court ultimately disallowed the introduction of Dr. Azer's testimony as to the likelihood of surgery, ruling that Dr. Azer lacked the requisite degree of certainty to give an expert opinion. That decision is not challenged herein.

A careful search of the record reveals no word of testimony from any witness that would otherwise support an award of future medical expenses or loss of future earnings. Indeed, after his attempts to introduce evidence as to future surgery were rebuffed, appellee's counsel abandoned his quest for future medical expenses, indicating to the Court that "we are not going to be arguing ... future medical expenses," and thus requested that the Court omit a portion of the previously agreed-to jury instructions that would have allowed appellants to comment on Ms. Wood's failure to call the physician who would perform the contemplated surgery. The Court consented. As noted above, it was only after the jury later inquired that the Court gave its instruction that permit-

ted the jury to consider future medical expenses.

While it is true that evidence was introduced regarding *past* expenses and lost wages, this was not sufficient to support the Court's instruction on the future elements. Appellee's reliance on *American Marietta Co. v. Griffin*, 203 A.2d 710 (D.C. 1964), is misplaced. In *Griffin*, the Court rejected an appellant's argument that because there was no medical testimony indicating that plaintiff's injury was permanent, the jury should not have been allowed to award permanent residual damages. The Court concluded that "when the bad effects of an injury have continued for years, laymen may reasonably infer permanence, even though there is no expert prediction that these injury residuals will continue," and that "[e]vidence of pain and suffering in existence at the time of trial has been held sufficient to take the question of permanence to the jury." *Id.* at 712 (citations omitted). *Griffin* has been interpreted as standing for the proposition that *"absent* medical testimony that injuries are temporary, a plaintiff's testimony concerning continuing pain and suffering will be sufficient to send the issue of *permanency* to the jury." *Davis v. Abbuhl*, 461 A.2d 473, 476 n. 5 (D.C.1983) (latter emphasis added). *Griffin* did not discuss—and we do not interpret it to imply—what quantum of evidence is sufficient to send the issues of future lost wages and medical expenses to the jury. More germane to the present case is *Curry v. Giant Food Co.*, 522 A.2d at 1291, where the Court affirmed the trial judge's refusal to submit the issue of future loss of income to the jury. After noting that only "reasonably certain" future damages are recoverable, the Court stated that "[u]nless there is nonspeculative evidence demonstrating that future suffering, additional medical expenses, and loss of income will occur, the question should not be submitted to the jury." *Id.* See also *Snead v. United States*, 595 F.Supp. 658, 667 (D.D.C.1984) (allowing a claim for future damages on the basis of "the reasoned and persuasive testimony ... as to [plaintiff's] life expectancy and anticipated medical needs, including the likelihood of future radiation, therapy, chemotherapy and surgery").

Even if the trial judge were correct that he "heard something about having to go to the doctor," this was not sufficient to submit appellee's claim of loss of future earnings to the jury. Similarly, even if it was reasonable to surmise that Ms. Wood would require "aspirin or valium, or whatever," this would not be sufficient to submit her claim for future medical expenses to the jury. Neither amounts to the "reasonable certainty" required under District of Columbia law to take these elements out of the realm of speculation. In short, there was no substantial evidence upon which the jury could "extrapolate" Ms. Wood's future medical expenses.

### CONCLUSION

As we have shown, once the testimony as to the possibility of surgery was excluded, there was no evidence in the record to support instructions as to loss of future earnings or future medical expenses. In such a case a jury may not be allowed to speculate, and this, under the instructions it was given, is what this jury was allowed to do.

Vacated and remanded for a new trial, limited to the issue of damages.