USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1691 JESSIE MEJIAS-QUIROS, ET AL., Plaintiffs, Appellants, v. MAXXAM PROPERTY CORP., Defendant, Appellee. ____________________ No. 96-1759 JESSIE MEJIAS-QUIROS, ET AL., Plaintiffs, Appellees, v. MAXXAM PROPERTY CORP., Defendant, Appellant. ____________________ ERRATA SHEET The opinion of this Court, issued on March 13, 1997, is amended as follows: On cover page, replace "[Hon. Hector M. Laffitte, U.S. ____ District Judge]" with "[Hon. Justo Arenas, U.S. Magistrate Judge]". ______________ _____________________ UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1691 JESSIE MEJIAS-QUIROS, ET AL., Plaintiffs, Appellants, v. MAXXAM PROPERTY CORP., Defendant, Appellee. ____________________ No. 96-1759 JESSIE MEJIAS-QUIROS, ET AL., Plaintiffs, Appellees, v. MAXXAM PROPERTY CORP., Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [[Hon. Justo Arenas, U.S. Magistrate Judge] _____________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Hector F. Oliveras-Delgado with whom Dario Rivera Carrasquillo ____________________________ __________________________ and Pinto-Lugo & Rivera were on brief for defendant. ___________________ Eric M. Quetglas Jordan with whom Quetglas Law Offices was on ________________________ _____________________ brief for plaintiffs.  ____________________ March 13, 1997 ____________________ BOUDIN, Circuit Judge. In this diversity action, ______________ brought in the district court, Jessie Mej as Quiros and his wife sued Maxxam Property Corporation ("Maxxam") for negligence. Mej as charged that injuries that he suffered during a fight on Maxxam's resort property were due to Maxxam's failure to provide adequate security to him as a guest. The jury awarded Mej as and his wife separate damages for pain and suffering and, in his case, for medical expenses. Both sides have appealed. A summary of the background events, largely not in dispute, is as follows. At the time of the incident, Mej as, then 24 years old, was vacationing at Maxxam's Palmas del Mar resort, located in Humacao, Puerto Rico. He and his wife planned to stay for a week with several friends and relatives at a villa in the Club Cala pool complex area of the resort. Around 11 p.m., on July 31, 1993, Mej as went for a stroll around the resort premises with his wife's brother-in-law, Francis Cardona, and his teenage neighbor, Jorge Gonz lez. The three men walked from the Club Cala area, across an adjacent parking lot, to a lawn located near the Palmas Inn Hotel and Casino. As many as 150 youths were gathered in smaller groups on the grass in front of the hotel, drinking and talking. There were apparently no hotel security officers in the immediate area. Mej as, Cardona and Gonz lez joined the youths, sitting on the grass together, talking, -2- -2- and looking around to see if they knew anyone there. Later, Mej as noticed a young woman in a group nearby and encouraged Gonz lez to go over and talk to her, saying something like "hecha, Jorge Tito," or "go for it, Jorge."  _____ A young man sitting with the girl whom Mej as had noticed heard his remark and challenged it, standing up and loudly asking Mej as what was going on. In response, Mej as also got up, and a scuffle ensued. Mej as was hit several times on his head and back while seeking only to defend himself. Then, the fight was broken up by several other youths, and Mej as, Cardona and Gonz lez left the scene. After they departed, a hotel security guard arrived to investigate, but since Mej as was gone, the guard took no action beyond questioning the youths still on the lawn. Mej as and his companions walked back across the Club Cala parking lot to the pool complex and sat down on some outdoor stairs, about one or two minutes' walk from their villa. The time was almost 1:00 a.m. About 20 minutes later, eight to ten of the youths from the group Mej as had encountered earlier approached from the parking lot. One of them kicked Cardona in the chest; he fell into the bushes and then ran in search of help. Then, the youths beat Mej as about his head, face and body, using a hard blunt object for at least one blow and ultimately knocking him unconscious.  -3- -3- Mej as sustained several cuts and bruises on his head and face, as well as abrasions on his knees. He required stitches for cuts over his right eye and in his left upper lip, and has been left with scars. According to trial testimony by Mej as and medical experts, Mej as has suffered continuing headaches, mild depression, low self-esteem, and post-traumatic stress--all as a result of the encounter and injuries inflicted upon him. Surgery would be required to minimize the scarring. Mej as and his wife, Zoribel D az, brought suit, charging that Maxxam had negligently failed to provide adequate security. The jury agreed. It awarded Mej as pain and suffering damages of $200,000 and medical expenses of $25,000, and awarded his wife $50,000 for pain and suffering. Maxxam moved for a new trial, asserting that the verdict was contrary to the evidence, that a requested comparative negligence instruction should have been given, and that the damages were excessive. The trial court denied the motion. On appeal, Maxxam no longer disputes the jury's finding that it was negligent, so the facts pertaining to this issue have not been developed. It argues instead that a new trial is warranted because the jury should have received a comparative negligence instruction and because the award of $25,000 for medical expenses was excessive. By a cross- appeal, Mej as asserts that under local law the district -4- -4- court should have awarded him attorney fees and pre-judgment interest due to Maxxam's alleged obstinacy in contesting the complaint.  We review de novo the district court's decision not to _______ give a comparative negligence instruction. Tatro v. Kervin, _____ ______ 41 F.3d 9, 14 (1st Cir. 1994). The issue is whether the evidence--viewed in the light most favorable to Maxxam, the party requesting the instruction--would have allowed a rational jury to find Mej as comparatively negligent. Sullivan v. National Football League, 34 F.3d 1091, 1107-09 ________ ________________________ (1st Cir. 1994), cert. denied, 115 S. Ct. 1252 (1995). _____________ Negligence, comparative or otherwise, is usually a jury issue, but only if there exists evidence from which a rational jury could find negligence in the case at hand.  Maxxam argues that Mej as was comparatively negligent because he should have foreseen that his remark to Gonz lez about the young woman sitting near them on the lawn would provoke a violent reaction from whatever young man accompanied her. Maxxam also points to Mej as' failure to report the first incident to hotel security, and it argues that he invited further trouble by moving to the outdoor Club Cala stairs instead of returning to his family's villa. Puerto Rico holds hotels to a stringent standard of care with respect to their guests; it requires hotels to respond to various risks of harm with security measures, and it thus -5- -5- effectively exposes the hotels in certain circumstances to liability for injuries inflicted on guests by third parties. See Coyne v. Taber Partners I, 53 F.3d 454, 458 (1st Cir. ___ _____ _________________ 1995). But Puerto Rico law reduces liability for "[c]oncurrent imprudence of the party aggrieved." 31 L.P.R.A. 5141. See Torrent v. Continental Ins. Co., 314 F. ___ _______ ____________________ Supp. 323, 325 (D.P.R. 1970). Against this legal background, we agree that the evidence of comparative negligence was too thin to require that the issue be submitted to a jury in this case.  Although Mej as' comment may have been in bad taste, it was a single comment to a friend, and not to a third party, made in a casual and festive atmosphere. There is no indication that Mej as was belligerent. As for Mej as' decision not to report the incident but to move away to the Club Cala stairs, one witness testified that these stairs were as much as one hundred meters away from the first incident's location, and no evidence suggests that they were visible from the grass outside the hotel and casino. We can find no case, and Maxxam has cited none, suggesting that Mej as' behavior constitutes negligence or could be viewed in that light by a reasonable jury. It might not take much more to create a jury issue: an offensive remark directed to the young lady whom Mej as had noticed could easily do; and, depending on circumstances, so might a -6- -6- refusal to leave the immediate area after the scuffle. But what occurred here is just too little to impute fault to Mej as. Compare Torrent, 314 F. Supp. at 325 (guest knew of _______ _______ dangerous condition). Maxxam also appeals from the district court's denial of its motion for a new trial on the ground that the $25,000 medical damages award was excessive. The federal rule is that a jury verdict may be set aside, and a new trial granted, if the award is excessive or against the weight of the evidence.1 An appeals court reviews the trial judge's denial of a new trial for abuse of discretion. Gasperini, _________ 116 S. Ct. at 2225. We will overturn such a denial only if the damages awarded lack "a rational basis in evidence." Air ___ Safety, Inc. v. Roman Catholic Archbishop of Boston, 94 F.3d ____________ ____________________________________ 1, 4 (1st Cir. 1996). This latter standard accords considerable latitude both to the jury's award and the trial judge's decision not to set it aside. The general language ("rational basis") is given content by cases declaring that the verdict should stand unless it is "'grossly excessive,' 'inordinate,' 'shocking to the conscience of the court,' or 'so high that it would be a  ____________________ 1See 11 C. Wright, et al., Federal Practice & Procedure ___ ______ _____________________________ 2807, at 78-79 (2d ed. 1995). If local law placed a substantive cap on medical damages, it would control, Gasperini v. Center for Humanities, Inc., 116 S. Ct. 2211, _________ ____________________________ 2220-21 (1996), but Puerto Rico case law suggests no such departure from ordinary practice, see, e.g., Rodr guez ___ ____ _________ Gonz lez v. Ponce Cement Corp., 98 P.R.R. 196, 213 (1969). ________ __________________ -7- -7- denial of justice to permit it to stand.'" Segal v. Gilbert _____ _______ Color Sys., Inc., 746 F.2d 78, 80-81 (1st Cir. 1984) __________________ (citations omitted). Nevertheless, there is an outer limit. Certainly, the jury could find that Mej as would likely incur future medical expenses (no past expenses were claimed). Dr. Angel Chinea, a neurologist, explained that Mej as suffered from chronic headaches, dizziness and insomnia, which he had treated with painkillers and relaxants. Dr. Fernando Cabrera, a psychiatrist, testified that Mej as had chronic mild depression and post-traumatic stress disorder. Cabrera prescribed medication including a mild tranquilizer, and recommended future therapy. But neither Chinea nor Cabrera offered any evidence as to the future cost of treating the conditions that they described. Dr. Carlos Portocarrero provided the only evidence regarding the actual cost of future medical treatment. He testified that reconstructive surgery to minimize Mej as' facial scars, which resulted from the incident, would cost between $3,000 and $4,000. Thus, the only specific figures offered to the jury supported, at most, an award of $4,000. Given the symptoms, any projection of future medical expenses beyond this figure could be only a fairly loose estimate. But without some figures from the doctors or others with useful knowledge, the jury was poorly equipped to -8- -8- determine what the medicines or therapy sessions would cost and how much or many of each might be required. And it is only these concrete expenses that are at issue; the suffering itself (e.g., from headaches and depression) was covered ____ under the jury instructions by the much larger award for pain and suffering. Deciding whether enough evidence has been presented can depend not only on what is offered but on what reasonably could be expected. On pain and suffering, courts readily tolerate estimates by the jury based on a description of the injury. E.g., Williams v. Missouri Pac. R.R. Co. , 11 F.3d ____ ________ ______________________ 132, 135 (10th Cir. 1993); McCormick on Damages 88, at 318 ____________________ (1935). But the cost of individual medicines and medical visits can easily be provided by experts able to offer informed forecasts beyond the ken of jurors.  Accordingly, the courts have been very reluctant to allow damages for future medical expenses in the absence of medical testimony that goes beyond mere assertions that office visits or medicines might be needed. E.g., Wood v. ____ ____ Day, 859 F.2d 1490, 1494 (D.C. Cir. 1988); Simeon v. T. Smith ___ ______ ________ & Son, Inc., 852 F.2d 1421, 1427-28 (5th Cir. 1988). The ____________ Tenth Circuit put the matter more generally in Williams, by ________ saying: "Unlike general damages for pain and suffering, which are not susceptible to proof by a dollar amount, medical expenses and loss of earnings must be proved by -9- -9- evidence demonstrating the reasonable value of those losses." 11 F.3d at 135. We think that the medical expense award in this case, to the extent it exceeded the $4,000 figure given for surgery, lacked any rational basis. There may be simple cases where, out of common experience, the jury can make such estimates, but hardly here and in so large an amount. The doctors who testified here, providing the groundwork for the handsome award for pain and suffering, could have been asked to quantify the future costs of medicine and office visits. Doubtless, the jury did the best it could without evidence; but the evidence should have been supplied.  Although the award of medical costs is excessive, we cannot order a reduction to the maximum $4,000 figure permitted by the evidence. This might appear odd, because trial judges and appellate courts often "decide" factual issues otherwise left to juries where the evidence is such that a reasonable jury could decide the issue only one way. That is what happens when a judge directs a verdict or--as here--refuses to instruct on a defense for which there is insufficient evidence. But damages are different. The reason is the Supreme Court's reading of the Seventh Amendment provision that "no fact tried by a jury shall be re-examined [in a federal court], than according to the rules of the common law." Construing this language, the Supreme -10- -10- Court has held that a jury verdict may be set aside where "palpably and grossly inadequate or excessive" but that "both parties remain entitled" to a jury determination as to damages by means of a new trial. Dimick v. Schiedt, 293 U.S. ______ _______ 474, 486 (1935). The Court then went on to temper the holding by reluctantly approving remittitur practice. Id. at ___ 484-88. Remittitur practice, perhaps not altogether easy to square with Dimick's literal language about the entitlement ______ of "both parties," is also well established. See Air Safety, ___ __________ 94 F.3d at 6; Wright, supra, 2820, at 216-17. Here, the _____ practice permits us to order the district court to afford Mej as a reasonable time in which to file a written acceptance of a reduced award of $4,000 for medical expenses; to deny a new trial if Mej as accepts the remittitur; and otherwise to vacate that portion of the judgment and order a new trial thereon. Finally, Mej as claims that Maxxam acted obstinately and that he is therefore entitled to an award of attorney fees and pre-judgment interest under P.R.R. Civ. P. 44.1(d) and 44.3(b). Such an award is allowed if the trial court finds that a litigant has been "unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation, thereby wasting time and causing the court and the other litigants unnecessary expense and delay." De Leon Lopez v. _____________ -11- -11- Corporacion Insular de Seguros, 931 F.2d 116, 126 (1st Cir. ______________________________ 1991). For obvious reasons, a trial court's denial of such damages is rarely upset. Qui ones-Pacheco v. American ________________ ________ Airlines, Inc., 979 F.2d 1, 7-8 (1st Cir. 1992). Mej as has ______________ offered three specific instances of alleged obstinate conduct. We have examined each with some care and conclude that the conduct, largely refusals to concede certain facts, were either trivial (in one case) or defensible (in several others). Mej as' most far-reaching claim--that the hotel was obstinate in denying its own negligence and in litigating the issue--cannot have been seriously intended. The judgment of the district court is vacated insofar as _______ it awards $25,000 to Mej as for medical costs and otherwise affirmed, and the matter is remanded to the district court ________ ________ for a new trial on medical costs unless Mej as accepts a remittitur reducing damages to $4,000 on this element of his damage claims. It is so ordered. ________________ -12- -12-