Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 7, 2003        Decided May 16, 2003

No. 02-7006

MEL J. HILL, ET AL.,
APPELLANTS

v.

REPUBLIC OF IRAQ AND SADDAM HUSSEIN,
IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE REPUBLIC OF IRAQ,
C/O MINISTRY OF FOREIGN AFFAIRS, BAGHDAD,
REPUBLIC OF IRAQ,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 99cv03346)

*Daniel Wolf* argued the cause for appellant. With him on the brief was *Steven M. Sprenger*.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

2

Before: RANDOLPH and ROGERS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The issue on appeal is whether the district court erred in denying appellants damages for economic loss in a suit brought under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–11 (2000). This court has not previously addressed the quantum of evidence that a plaintiff must present to obtain damages against a non-immune foreign state. Today we hold that under FSIA a plaintiff must prove that the projected consequences are "reasonably certain" (i.e., more likely than not) to occur, and must prove the amount of damages by a "reasonable estimate" consistent with this court's application of the American rule on damages. Accordingly, we remand the case to the district court.

## I.

Appellants are six former hostages who were denied permission to leave Kuwait and Iraq by the armed forces and civilian police of the Republic of Iraq after Iraq invaded Kuwait on August 2, 1990, prior to the start of the Gulf War in 1990–91. They filed suit against Iraq and its leader pursuant to the FSIA for hostage taking and sought damages for the associated pain and suffering, mental anguish, and physical injuries resulting from their detention and for their loss of income and other economic injuries. After the appellants-plaintiffs properly served the appellees-defendants, *see* 28 U.S.C. § 1608(a)(4), and they failed to plead or otherwise defend, *see* 28 U.S.C. § 1608(d), the Clerk of the Court entered a default and the district court thereafter held an evidentiary hearing. *See Hill v. Republic of Iraq*, 175 F. Supp. 2d 36, 38 (D.D.C. 2001).

As relevant to this appeal, appellants presented evidence to establish that at the time of the invasion they were United States citizens living and working in Iraq and Kuwait, four for private corporations, one for the United States government, and one as a minister. Each appellant offered evidence

to establish that he had suffered and continues to suffer physical and mental injuries as a result of his experiences as a hostage in Iraq or Kuwait. In addition, appellants offered expert evidence from a psychiatrist specializing in post-traumatic stress syndrome frequently experienced by former hostages on the varying degrees each appellant has suffered and continues to suffer psychological trauma.

On August 2, 1990, David Morris was 49 years old and working for the Bechtel Corporation on an Iraqi oil project near Baghdad. He testified that he continued to experience symptoms of post-traumatic stress and that the psychological trauma of his hostage experience has made it impossible for him to resume a career; he submitted documentation from several therapists who have diagnosed Morris with depression and/or post-traumatic stress syndrome and from the Social Security Administration declaring Morris permanently disabled. Jack Frazier, age 53 at the time, was a manager with the Bechtel Corporation for an oil refinery outside of Baghdad. He testified that because he was denied his diabetes medication, he had developed progressive diabetic neuropathy which has resulted in the substantial deterioration of his health to the point where simple activities such as walking and using his hands for mundane tasks are extremely difficult and thus he cannot sustain a career; he offered supportive evidence from his treating physicians. The other four appellants testified regarding their psychological inability to travel overseas or at least to the Middle East and thus consequent loss of career opportunities that each pursued prior to August 2, 1990. Bill Rodebush was 52 years old in 1990 and working as a field supervisor for Dresser Industries working on a Kuwaiti oil rig; working for Dresser in China for two years after his hostage experience, he found that he was unable to handle the psychological strain of being in a foreign country and thus was unable to continue his employment with Dresser and had to accept a lower paying job at Wal–Mart. Paul Eliopoulos, then 38 years old, managed Arthur Andersen's local consulting practice in Kuwait City, and claimed that his inability to return to Kuwait cost him a promised partnership and resulted in his dismissal from the company. Charles

Kolb was a 21–year-old language instructor for the United States Information Agency in Baghdad and claimed that because he was psychologically unable to return to the Middle East, he has been unsuccessful in pursuing a career using his foreign language skills in Arabic and Farsi and has been forced to take a lower paying job in the United States. Reverend Virgil Graham was 51 years old at the time and doing missionary work for the National Evangelical Church in Kuwait City, but he similarly found it impossible to work abroad and was forced to accept a lower paying position as a minister in the United States, losing other benefits from missionary work overseas.

The district court construed § 1608(e) to require a FSIA plaintiff to prove his claims "by evidence of a nature and quality sufficient to support summary judgment under Fed. R. Civ. P. 56, namely, oral or written testimony under oath, made upon personal knowledge by witnesses competent to testify to the matters stated therein. *See* Fed. R. Civ. P. 56(e)." *Hill*, 175 F. Supp. 2d at 38 & n.4. So construed, the district court found that appellants had suffered and continue to suffer psychological and physical injuries as a result of their experiences as hostages, and awarded damages based on their pain and suffering both "during their ordeals" and "after captivity . . . ceased." *Id.* at 46–47. The court awarded appellants damages for hostage taking (false imprisonment) and the associated pain and suffering and mental anguish, for post-traumatic stress disorders, and for physical injuries and loss of consortium. The court also awarded Frazier damages for exacerbation of his diabetic condition. Notwithstanding the evidence of "residual psychic effects" on their livelihoods and "plausible" explanations for their "work-related problems," however, the district court concluded that the evidence of economic loss was "too speculative, and without a basis to exclude unrelated factors as causative of adverse fortunes in their working lives, to ascribe any quantity of monetary damages to their economic claims." *Id.* at 47. The court also ruled that the cost of any therapy they have had or might have was "too imprecise to quantify into damage awards." *Id.*

**II.**

The issue before this court is confined to review of the district court's decision on damages for economic loss. We are assuming the defendants' liability and do not address the question of the FSIA's plaintiff's burden on proof on liability.[1]

This court has not addressed the quantum of evidence regarding damages and to date other circuits have not provided guidance on this issue. Our review is for abuse of discretion. *See Gulf Arab Media–Arab Am. Film Co. v. Faisal Found.*, 811 F.2d 1260, 1262 (9th Cir. 1987); *cf. Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 373–74 (D.C. Cir. 1980). Because it is an abuse of discretion to apply the wrong standard or to consider an improper factor, we hold that the district court erred by failing to apply the normal standard for damages for economic loss.

No section of the FSIA directly addresses the quantum of proof for damages. Section 1608(e) provides that a default judgment shall not be entered against a foreign state "unless the claimant establishes his [or her] claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). The Report of the House Judiciary Committee, noting that § 1608(e) establishes "the same requirement applicable to default judgments against the U.S. Government under rule 55(e), F.R. Civ. P.," observed that "[i]n determining whether the claimant has established his claim or right to relief, it is expected that courts will take into account the extent to which the plaintiff's case depends on appropriate discovery against the foreign state." H.R. REP. NO. 94–1487, at 26 (footnote omitted) (1976); *see also* S. REP. NO. 94–1310, at 25 (1976) ("Legislative History").

---

[1] Because no issue is raised we will assume that appellants (1) have a cause of action against Iraq; *see Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 87 (D.C. Cir. 2002); and (2) adequately alleged hostage taking, bringing their claims within FSIA §§ 1605(a)(7) & 1605(e)(2). *See Simpson v. Socialist People's Libyan Arab Jamahiriya*, —— F.3d ——, 2003 WL 1906337, at *2–3 (D.C. Cir. Apr. 22, 2003).

Section 1606 of the FSIA provides, however, that "as to any claim for relief with respect to which a foreign state is not entitled to immunity . . ., the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances," subject to exceptions inapplicable here. 28 U.S.C. § 1606. Therefore, a FSIA default winner must prove damages "in the same manner and to the same extent" any as other default winner. *Cf. Alameda v. Sec'y of Health, Educ. & Welfare*, 622 F.2d 1044, 1048 (1st Cir. 1980) (dictum). Other than protection against procedural default, with the possibility of a relaxed evidentiary burden on the FSIA plaintiff, *see supra* Legislative History, a non-immune foreign state is subject under the FSIA to federal common law for determining the amount of damages a plaintiff can recover, with qualifications not relevant here. *See* 28 U.S.C. § 1606; *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 333 (D.C. Cir. 2003).

The seminal case of *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931), states the American rule on damages:

> Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of damages as a matter of just and reasonable inference, although the result be only approximate.

*Id*. at 563. This approach continues to be reflected in the literature. *See* RESTATEMENT (SECOND) OF TORTS § 912 cmts. d & e; *id*. § 924 & cmts. d & e; 1 ROBERT DUNN, RECOVERY OF DAMAGES FOR LOST PROFITS § 1.4, at 9–10 (5th ed. 1998). As expressed by one commentator, a plaintiff may recover damages for past economic losses if such losses are "reasonably proved," while a plaintiff may recover for future harm only by

a reasonable certainty or preponderance of the evidence. DAN B. DOBBS, DOBBS LAW OF REMEDIES § 8.1(2), at 361–62, § 8.1(7) at 407 (2d ed. 1993). This approach has been adopted by this circuit in construing District of Columbia law. *See Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227, 1235 (D.C. Cir. 1997); *Wood v. Day*, 859 F.2d 1490, 1493 (D.C. Cir. 1988); 28 U.S.C. § 1391(f)(4). In *Samaritan Inns*, a lost profits case, the court applied *Story*, stating that a plaintiff must "prove the fact of injury with reasonable certainty, [and prove] the amount of damages . . . based on a reasonable estimate," *Samaritan Inns*, 114 F.3d at 1235; the plaintiff failed to meet its burden because its measure of damages rested on a faulty premise. *Id.* at 1235–37. In *Wood*, the court explained that "damages for future consequences are recoverable only if plaintiff establishes that it is 'more likely than not (a greater than 50% chance) that the projected consequence will occur,' " essentially a preponderance standard. *Wood*, 859 F.2d at 1493 (quoting *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 119 (D.C. Cir. 1982)). Regarding the amount of damages, the court instructed that while damages cannot be awarded on the basis of "mere speculation or guesswork," *Wood*, 859 F.2d at 1493, the plaintiff need only provide "some reasonable basis on which to estimate damages." *Id.* (quoting *Romer v. District of Columbia*, 449 A.2d 1097, 1100 (D.C. 1982)).

Consequently, we hold that to recover damages a FSIA plaintiff must prove that the projected consequences are "reasonably certain" (i.e., more likely than not) to occur, and must prove the amount of damages by a "reasonable estimate" under this circuit's application of *Story*. This is consistent with § 1606 and not inconsistent with § 1608(e), which is silent on damages, and assures that a FSIA plaintiff's recovery of damages has some proportionality to the harm proved. It is fair to hold FSIA default-judgment winners to the same preponderance standard of damages as other default-judgment winners with regard to future damages, as at the damages stage the FSIA plaintiff is no longer handicapped by the defendant's absence and proof of future damages is likely in the plaintiff's control. As to past damages, the district

court properly could take into account any special problems of proof arising from the defendant's absence, consistent with Congress' statement of its intent in establishing a liability threshold. *See supra* Legislative History.

Because the district court's failure to apply the proper standard was not harmless, we must remand. Appellants' claims for economic loss include lost wages and economic damages incurred prior to commencement of the instant lawsuit and future lost wages and economic damages incurred thereafter. *See* Complaint ¶¶ 35, 39. So far as the record reveals, the district court failed to use the correct standard ("reasonable certainty" and "reasonable estimate") and abused its discretion by going beyond the evidence presented into its own unsupported speculation about other unidentified unrelated factors. In considering whether to award damages for economic loss, the district court must confine itself to the evidence actually presented and not speculate about what other evidence might have been brought to the court's attention in a two-sided proceeding. Moreover, in rejecting all of the economic loss claims as speculative, the district court did not differentiate among each appellant's evidence in support of his economic loss. Yet, the district court found that appellants' claims for economic losses based on their experiences as hostages were plausible. *See Hill*, 175 F. Supp. 2d at 47. Further, as to the four appellants (Eliopoulos, Kolb, Graham and Rodebush) who based their claim of economic loss on their inability to travel overseas because of post-traumatic stress syndrome, the district court credited the testimony of appellants' expert and found that these appellants would "avoid any situation or experience, physical or mental, which is likely to revive recollections of their ordeals." *Id.* With respect to Frazier, the district court awarded additional damages for the exacerbation of his diabetic complications. *Id.* at 48. Absent explanation, these findings appear inconsistent with rejection of all of appellants' economic loss claims. *See* Fed. R. Civ. P. 52(a); *Cicippio v. Islamic Republic of Iran*, 18 F. Supp. 2d 62, 69–70 (D.D.C. 1998).

Accordingly, we reverse the judgment denying appellants' claims for economic loss and remand the case to the district court to apply the proper standard.