Blake KILBURN, Plaintiff,

v.

The REPUBLIC OF IRAN
et al., Defendants.

No. CIV.A. 01–1301(RMU).

United States District Court,
District of Columbia.

Aug. 8, 2003.

(2001).

Michael Lee Martinez, Stuart Henry Newberger, Crowell & Moring, L.L.P., Washington, DC, for plaintiff.

Arman Dabiri Abkenari, Washington, DC, for defendants.

## *MEMORANDUM OPINION*

### DENYING DEFENDANTS LIBYA AND LESO'S MOTION TO DISMISS

URBINA, District Judge.

### I. INTRODUCTION

This case presents issues concerning the state-sponsored terrorism exception to foreign sovereign immunity and arises from an instance of hostage taking, torture and extrajudicial killing that occurred in Lebanon between 1984 and 1986. The plaintiff alleges that the defendants provided material support to the terrorist groups responsible for these acts. The matter is currently before the court on defendants the Socialist People's Libyan Arab Jamahiriya ("Libya") and Libyan External Security Organization's ("LESO") motion to dismiss for want of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, specifically the state-sponsored terrorism exception codified at 28 U.S.C. § 1605(a)(7); lack of personal jurisdiction under Rule 12(b)(2) and the Fifth Amendment's Due Process Clause; and, failure to state a claim pursuant to Rule 12(b)(6). First, the court rejects the Rule 12(b)(1) challenge because the plaintiff has a legal basis for claiming an exception to foreign sovereign immunity, the plaintiff's pled facts are sufficient to bring the case within the court's jurisdiction, the plaintiff has provided sufficient evidence to support his allegations at this early stage in the proceedings, and the plaintiff need not show causation as a requirement for subject-matter jurisdiction. Second, the court rejects the Rule 12(b)(2) challenge on the basis that the

court has personal jurisdiction over these defendants. Third, the court rejects the Rule 12(b)(6) challenge because the plaintiff properly relies on common-law causes of action for his substantive claims and because the Flatow Amendment does provide a cause of action against foreign states. As a final point, the court sustains the plaintiff's claim for punitive damages. Accordingly, the court denies the motion to dismiss.

## II. BACKGROUND

### A. Factual Background

The plaintiff, Blake Kilburn, is the brother and only surviving family member of Peter Kilburn, an American citizen who was one of the many victims of Middle Eastern terrorism during the mid–1980s. Compl. at 2–3. The plaintiff brings this action on his own behalf and in his capacity as the executor of Peter Kilburn's estate. *Id.* at 3. In November 1984, while employed as a librarian and instructor of library sciences at the American University of Beirut, Peter Kilburn was kidnapped from his apartment located in Beirut, Lebanon. *Id.* at 6. One month later, the terrorist group known as Hizballah claimed responsibility for Peter Kilburn's kidnapping. *Id.*

Peter Kilburn was held captive until April of 1986. *Id.* On April 14, 1986, the United States bombed Tripoli, the capital of Libya, in retaliation for Libya's terrorist activities. *Id.* at 7. As a result, Libyan agents in Lebanon advertised that they wished to purchase and murder an American hostage in retaliation for the bombing of Tripoli. *Id.*

Sometime between April 14 and 17, 1986, Hizballah sold Peter Kilburn to the Libyan-sponsored Arab ˙Revolutionary Cells for approximately $3 million. *Id.* Peter Kilburn, along with two British hostages, was found shot in the back of the head on the side of a road near Beirut on April 17, 1986. *Id.* In a note found near the bodies, the Arab Revolutionary Cells claimed responsibility for the murders. *Id.*

The plaintiff alleges that while Hizballah held Peter Kilburn hostage, his captors forced him to wear a blindfold at all times, kept him continually shackled to a wall or floor, beat or threatened him with beatings, confined him to a small cell with no opportunity to exercise, fed him a monotonous and unhealthy diet, limited him to one brief toilet visit per day, and denied him adequate medical care. *Id.* at 6. All of these events caused Peter Kilburn immense pain and suffering, and inflicted great emotional distress on the plaintiff. *Id.* at 8.

The defendants in this case are the Islamic Republic of Iran ("Iran"), the Iranian Ministry of Information and Security ("MOIS"), Libya, and LESO. *Id.* at 2–6. The plaintiff alleges jurisdiction under the state-sponsored terrorism exception to sovereign immunity, claiming that Iran and MOIS provided material support to Hizballah for their Lebanon-based activities, including the kidnapping and torture of Peter Kilburn, while Libya and LESO provided material support to the Arab Revolutionary Cells for their terrorist activities, including the purchase and extrajudicial killing of Peter Kilburn. *Id.* at 2–5.

### B. Procedural History

On June 12, 2001, the plaintiff filed his complaint with this court, seeking recovery for the common-law torts of wrongful death, battery, assault, false imprisonment, slave trafficking, and intentional infliction of emotional distress. *Id.* at 10–18. In addition, the plaintiff asserts claims for loss of solatium and economic damages against all four defendants, and punitive

damages against MOIS and LESO.[1] *Id.* at 10–21. Defendants Libya and LESO (collectively, "the defendants") have filed a joint motion to dismiss for lack of subject-matter jurisdiction, personal jurisdiction, and failure to state a claim pursuant to Rule 12(b)(1), (2), and (6).

## III. ANALYSIS

### A. Subject–Matter Jurisdiction [2]

The defendants make several arguments regarding subject-matter jurisdiction. Defs.' Mot. to Dismiss ("Defs.' Mot.") at 6–12. First, they argue that the plaintiff's legal basis for the state-sponsored terrorism exception to foreign sovereign immunity is incorrect. *Id.* at 6–8. Second, they challenge both the legal sufficiency of the facts pled by the plaintiff and the truth of those facts. *Id.* at 8, 10–12. Third, they argue that the plaintiff has not shown a sufficient causal connection between the foreign-state actors and the acts in question. *Id.* at 8–10. The court is not persuaded by these arguments and determines that the plaintiff has a legal basis for claiming an exception to foreign sover-

eign immunity, and that the facts pled are not only sufficient to bring the case within this court's jurisdiction but that the plaintiff has provided sufficient evidence to support his factual allegations at this early stage in the proceedings, and the plaintiff need not show causation as a requirement for subject-matter jurisdiction. For these reasons, the court denies the defendants' motion to dismiss.

### 1. Legal Standard for a Rule 12(b)(1) Motion to Dismiss Under the FSIA

■ The Foreign Sovereign Immunities Act ("FSIA") is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). The basic premise of the FSIA is that foreign sovereigns are immune from suit in the United States unless the action falls under one of the specific exceptions enumerated in the statute. 28 U.S.C. § 1604. If the foreign sovereign is not immune, the federal district courts have exclusive jurisdiction over the action. 28 U.S.C. §§ 1330,

---

1. Although it appears that the plaintiff properly served defendants Iran and MOIS, these defendants have not yet entered an appearance. Return of Service/Aff. Executed as to Defs. Iran & MOIS dated Feb. 8, 2002. The court suspects that, given their solidified pattern of failing to appear in such cases brought under 28 U.S.C. § 1605(a)(7), defendants Iran and MOIS will likely not do so. *E.g., Kerr v. Islamic Republic of Iran*, 245 F.Supp.2d 59 (D.D.C.2003) (Jackson, J.); *Flatow v. Islamic Republic of Iran*, 999 F.Supp. 1 (D.D.C.1998) (Lamberth, J.).

2. To date, the vast majority of cases decided under this section are default judgments, which put all of the issues, including subject-matter jurisdiction and liability, squarely before the court at the same time. Given this circumstance, courts will generally conflate subject-matter jurisdiction and liability, as the plaintiff must make some showing of liability for the court to assert subject-matter jurisdic-

tion under section 1605(a)(7). *See, e.g., Peterson v. Islamic Republic of Iran*, 264 F.Supp.2d 46 (D.D.C.2003) (Lamberth, J.). This case, however, is distinguishable from the default cases because defendants Libya and LESO have appeared and made a motion to dismiss for lack of subject-matter jurisdiction. Therefore, the issue of liability is not before the court at this time. Nonetheless, the plaintiff must advance evidence to support his allegations through jurisdictional discovery. Once the plaintiff meets this burden, the defendant must be given a chance to contest this evidence and challenge the plaintiff's allegations before the court can rule on the issue of liability. A defendant's challenge to the plaintiff's evidence, therefore, is proper at the trial, not on a motion to dismiss. If the court decided otherwise, it would be forcing a minitrial of the case's substantive issues on a motion to dismiss.

1604; *Daliberti v. Republic of Iraq,* 97 F.Supp.2d 38, 42 (D.D.C.2000) (Friedman, J.) (citing *Amerada Hess,* 488 U.S. at 434–35, 109 S.Ct. 683).

Under the FSIA, the foreign sovereign has "immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." *Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 39 (D.C.Cir.2000) (quoting *Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 443 (D.C.Cir.1990)). The special circumstances of a foreign sovereign require the court to engage in more than the usual pretrial factual and legal determinations. *Foremost–McKesson,* 905 F.2d at 449. The D.C. Circuit has noted that it is particularly important that the court "satisfy itself of its authority to hear the case" before trial. *Id.* (quoting *Prakash v. Am. Univ.,* 727 F.2d 1174, 1179 (D.C.Cir.1984)).

Once a foreign-sovereign defendant asserts immunity, the plaintiff bears the burden of producing evidence to show that there is no immunity and that the court therefore has jurisdiction over the plaintiff's claims. *Daliberti,* 97 F.Supp.2d at 42 (citations omitted). A court may dismiss a complaint brought under the FSIA only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Id.* (citations omitted). Once the plaintiff has shown that the foreign defendant is not immune from suit, the defendant bears the burden of proving that the plaintiff's allegations do not bring the case within one of the statutory exceptions to immunity. *Phoenix Consulting,* 216 F.3d at 40.

The exception to foreign sovereign immunity at issue in this case is the state-sponsored terrorism exception, codified at 28 U.S.C. § 1605(a)(7), that Congress enacted as part of the comprehensive Anti-terrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, § 221(a), 110 Stat. 1214 (Apr. 24, 1996), which provides that foreign sovereigns are not immune when

[m]oney damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources … for such an act if such act or provision of material resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency[.]

28 U.S.C. § 1605(a)(7). The statute gives three additional requirements for the exception to apply: (1) the foreign state must be designated as a state sponsor of terrorism at the time the act occurred or was designated as such as a result of such an act; (2) the plaintiff must afford the foreign state a reasonable opportunity to arbitrate the dispute if the act occurred within that state's territory; and (3) either the claimant or the victim must have been a United States national at the time the act occurred. 28 U.S.C. § 1605(a)(7)(A)-(B).

On a Rule 12(b)(1) motion to dismiss in an FSIA case, the defendant may challenge either the legal sufficiency or the factual underpinning of an exception. *Phoenix Consulting,* 216 F.3d at 40. Given that a foreign-state actor's entitlement to immunity from suit is a critical preliminary determination, the parties have the responsibility, and must be afforded a fair opportunity, to define issues of fact and law, and to submit evidence necessary to the resolution of the issues. *Foremost–McKesson,* 905 F.2d at 449 (*citing Gould, Inc. v. Pechiney Ugine Kuhlmann & Trefimetaux,* 853 F.2d 445, 451 (6th Cir. 1988)). Thus, the court must resolve the

substantive immunity-law issues of section 1605 before reaching a decision on subject-matter jurisdiction. *Id.* (citations omitted).

If the defendant challenges the legal sufficiency of the plaintiff's jurisdictional allegations, the court should accept the plaintiff's factual allegations as true and determine whether such facts bring the case within any of the exceptions to foreign-state immunity invoked by the plaintiff. *Id.* This standard is similar to that of Rule 12(b)(6), under which dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief. *Price v. Socialist People's Libyan Arab Jamahiriya,* 294 F.3d 82, 93 (D.C.Cir. 2002) (*"Price II"*). The plaintiff need not set out all of the precise facts on which he bases his claim to survive a motion to dismiss. *Id.*

If the defendant challenges the factual basis of the court's jurisdiction, however, the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff. *Phoenix Consulting,* 216 F.3d at 40. Instead, the court must resolve any disputed issues of fact, the resolution of which is necessary to a ruling upon the motion to dismiss. *Id.; Price II,* 294 F.3d at 90; *Foremost–McKesson,* 905 F.2d at 449. The court has "considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction," but it must give the plaintiff "ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Phoenix Consulting,* 216 F.3d at 40 (quoting *Prakash,* 727 F.2d at 1179–80). To avoid burdening a foreign sovereign that proves to be immune from suit, however, the court should carefully control and limit jurisdictional discovery. *Id.; Foremost–McKesson,* 905 F.2d at 449.

### 2. Subject–Matter Jurisdiction Exists Because a Foreign State's General Support of a Terrorist Group Brings That State Within the State–Sponsored Terrorism Exception to Foreign Sovereign Immunity

The defendants challenge the legal basis for the plaintiff's jurisdictional allegations. Defs.' Mot. at 6–8 (citing 28 U.S.C. § 1605(a)(7)). Specifically, defendants claim that the clear language of section 1605(a)(7) requires the plaintiff to show that defendant Libya's material support provided through defendant LESO was used to directly fund the acts giving rise to the plaintiff's claims. *Id.*

 When a statute is clear and unambiguous, the sole function of the court is to enforce the statute's plain meaning. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000); *Harbor Gateway Comm'l Prop. v. Envtl. Prot. Agency,* 167 F.3d 602, 606 (D.C.Cir.1999) (explaining that "when a statute's meaning is clear, and the enactment is within the constitutional authority of Congress, the sole function of the courts is to enforce it according to its terms") (citations omitted). Here, the FSIA provides that a foreign state cannot claim immunity when it engages in "the provision of material support or resources ... for such an act." 28 U.S.C. § 1605(a)(7). Contrary to the defendants' interpretation, the statute does not require a direct link between such material support and the acts in question. *Id.* The only court that has directly addressed this issue held that:

> a plaintiff need not establish that the material support or resources provided by a foreign state for a terrorist act contributed directly to the act from which his claim arises in order to satisfy 28 U.S.C. § 1605(a)(7)'s statutory requirements for subject matter jurisdic-

tion. Sponsorship of a terrorist group which causes the personal injury or death of a United States national alone is sufficient to invoke jurisdiction. *Flatow v. Islamic Republic of Iran*, 999 F.Supp. 1, 18 (D.D.C.1998) (Lamberth, J.). In fact, the *Flatow* court found nothing in either section 1605(a)(7) or in the section defining "material support" to indicate anything to the contrary.[3] *Id.* Since *Flatow*, many other cases decided in this circuit have relied on this reading of the statute. *See e.g., Cronin v. Islamic Republic of Iran*, 238 F.Supp.2d 222, 234 (D.D.C.2002) (Lamberth, J.); *Surette v. Islamic Republic of Iran*, 231 F.Supp.2d 260, 267 (D.D.C.2002) (Friedman, J.); *Stethem v. Islamic Republic of Iran*, 201 F.Supp.2d 78, 86–87 (D.D.C.2002) (Jackson, J.); *Mousa v. Islamic Republic of Iran*, 238 F.Supp.2d 1 (D.D.C.2001) (Bryant, J.); *Elahi v. Islamic Republic of Iran*, 124 F.Supp.2d 97, 107–08 (D.D.C.2000) (Green, J.); *Higgins v. Islamic Republic of Iran*, 2000 WL 33674311, at *6, 7, 2000 U.S. Dist. LEXIS 22173, at *18–20 (D.D.C. 2000) (Kotelly, J.). Thus, this court cannot say that the statute unambiguously states the opposite of this reasoned precedent. Other than the plain meaning of the statute, which is not plain at all, the defendants cite no authority to support their claim that the material support given by the state must go directly to the acts in question. Defs.' Mot. at 6–8; Defs.' Reply at 3–4.

Accordingly, the court concludes that the defendants have advanced no persuasive reason to break with the *stare decisis* of previous cases brought under section 1605(a)(7), and therefore determines that the plaintiff's allegations of the defendants' general sponsorship of a terrorist group that engaged in the torture, extrajudicial killing, and hostage-taking of Peter Kilburn, resulting in his personal injuries and death, are enough for the plaintiff to properly assert this court's jurisdiction. 28 U.S.C. § 1605(a)(7); *Flatow*, 999 F.Supp. at 18; Compl. at 6–9. Moreover, to break with the only available precedent, which admittedly is made up of default judgments, would be to remove the teeth from the statute. Indeed, it would be almost impossible for any plaintiff to show a direct link between the foreign state and the terrorist act in question because such a showing would require access to detailed records of meetings between and the finances of the terrorist group and the foreign state. Given that such evidence is unlikely to be available to plaintiffs, to require plaintiffs to demonstrate this link would, in the vast majority of cases, place an insurmountable burden on them. Such a demand would negate Congress's intent for enacting the state-sponsored terrorism exception of section 1605(a)(7).

### 3. The Plaintiff Has Sufficiently Pled Adequate Facts to Bring the Case Under Section 1605(a)(7)'s Exception to Foreign Sovereign Immunity

▪ The defendants claim that the plaintiff has not set forth sufficient facts in his complaint to bring his claims under section 1605(a)(7), that the complaint is too conclusory, and that the materials provided by the plaintiffs during jurisdictional discovery are either too vague or simply contradict the complaint's allegations. Defs.' Mot. at 8. The court is not persuad-

---

**3.** Section 2339A(b) defines material support or resources as "currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials." 18 U.S.C. § 2339A(b). Section 1605(a)(7) incorporates 18 U.S.C. § 2339A by reference. 28 U.S.C. § 1605(a)(7).

ed by these arguments and concludes that the plaintiff has sufficiently pled adequate facts to support jurisdiction in this case.

There are six separate elements that the plaintiff must establish in order for the court to exercise its jurisdiction over the defendants:

(1) that personal injury or death resulted from an act of torture, extrajudicial killing, aircraft sabotage, or hostage taking;

(2) that the act was either perpetrated by the foreign state directly or by a non-state actor which receives material support or resources from the foreign state defendant;

(3) that the act or the provision of material support or resources is engaged in by an agent, official or employee of the foreign state while acting within the scope of his or her office, agency or employment;

(4) that the foreign state be designated as a state sponsor of terrorism either at the time the incident complained of occurred or was later so designated as a result of such act;

(5) that, if the incident complained of occurred within the foreign state defendant's territory, plaintiff has offered the defendants a reasonable opportunity to arbitrate the matter; and

(6) that either the plaintiff or the victim was a United States national at the time of the incident.

*Flatow,* 999 F.Supp. at 16 (paraphrasing 28 U.S.C. 1605(a)(7)).[4] The defendants do not appear to challenge the first, fourth, fifth, and sixth of these elements: that Peter Kilburn was a victim of torture, extrajudicial killing, and hostage taking; that defendant Libya was a designated state sponsor of terrorism at the time of the incidents; that the plaintiff need not pursue arbitration given that the alleged incidents did not occur within the territory of defendant Libya; and that the plaintiff and Peter Kilburn were United States nationals at the time of the incident. *See generally* Defs.' Mot. The defendants do, however, challenge the second and third of these elements: that they or a non-state actor receiving material support from them perpetrated the alleged hostage taking and killing of Peter Kilburn, and that they provided support to the terrorist groups involved in those wrongful acts. Defs.' Mot. at 8, 10–12.

Because the defendants contest the legal sufficiency of the plaintiff's claims, the applicable standard for reviewing the defendants' challenge is similar to that of a Rule 12(b)(6) motion, under which dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief. *Price II,* 294 F.3d at 93; *Phoenix Consulting,* 216 F.3d at 40. The plaintiffs have alleged that defendant Libya, through defendant LESO, provided material support and resources to the Arab Revolutionary Cells for its terrorist activities in Lebanon including the actions relating to Peter Kilburn's sale and murder. Compl. at 4–5. These allegations, if proven true, are enough for the court to conclude the defendants' liability. 28 U.S.C. § 1605(a)(7); "Civil Liability for Acts of State Sponsored Terrorism," Pub.L. No. 104–208, § 589,

---

4. As an additional element for liability, "Civil Liability for Acts of State Sponsored Terrorism," Pub.L. No. 104–208, § 589, 110 Stat. 3009 (1996), codified at 28 U.S.C. § 1605 note, otherwise known as the Flatow Amendment, requires that similar conduct by United States agents, officials, or employees within the United States would be actionable. *Id.; Cronin,* 238 F.Supp.2d at 234. Because the court's ruling today addresses only jurisdiction and not liability, this additional element is irrelevant at this time.

110 Stat. 3009 (1996), codified at 28 U.S.C. § 1605 note (Flatow Amendment). Thus, the court determines that the plaintiff has alleged facts that are legally sufficient to survive a motion to dismiss. *See Phoenix Consulting*, 216 F.3d at 40.

The defendants also appear to have challenged the factual underpinnings of the complaint. Therefore, the court must look to the additional material contained in the jurisdictional discovery to decide whether the case falls under the exception to foreign sovereign immunity laid out in section 1605(a)(7).[5] 28 U.S.C. § 1605(a)(7); *Phoenix Consulting*, 216 F.3d at 40; *Foremost–McKesson*, 905 F.2d at 449. The court is fully satisfied that the plaintiff has met his burden of showing that section 1605(a)(7) applies here. In response to the defendants' interrogatories, the plaintiff has listed five witnesses who will testify that the government of Libya is responsible for the purchase and killing of Peter Kilburn.[6] Pl.'s Opp'n Ex. 3 ( Pl.'s Resp. to Defs.' First Set of Interrogs.). According to the plaintiff, these witnesses each can testify that the Libyan government paid the terrorist organization holding Peter Kilburn to purchase and then execute him along with the two British nationals. *Id.* In addition, one of these witnesses has already provided a statement under penalty of perjury describing his qualifications as an expert witness in this area and supporting the plaintiff's claims.[7] *Id.* Ex. 1 (Oakley Decl.).

The plaintiff also has produced documents from the CIA and the State Department that serve to buttress his allegations. *Id.* Exs. 1, 2. One such document is a CIA publication stating that Libyan leader "Qadhafi has hired Hizballah elements to help him obtain control of Western hostages." *Id.* Ex. 1–C (*Libya: Reviewing Terrorist Capabilities*) at CIA Bates Stamp No. 3957. The next few lines of that document are redacted, followed by the statement that "[a]ll three *were murdered* two days after the U.S. airstrikes in 1986." *Id.* (emphasis added). Reason, inference, and the totality of the circumstances lead the court to conclude that these phrases refer to Peter Kilburn and the two British hostages who were *found* murdered three days after the bombing of Tripoli. *Id.;* Compl. at 7. In addition, the 1986 edition of a State Department annual publication notes that British Foreign Secretary Howe publicly linked Libya to the April 1986 murder of Peter Kilburn and the two British hostages. Pl.'s Opp'n Ex. 1–F (*Patterns of Global Terrorism, 1986*) at 5.

---

5. While the D.C. Circuit has explained that the court must look beyond the pleadings and even conduct limited jurisdictional discovery when a foreign-sovereign defendant challenges the factual basis for subject-matter jurisdiction under the FSIA, there is no authority to direct this court as to the appropriate burden of proof. *Price II*, 294 F.3d at 90; *Phoenix Consulting*, 216 F.3d at 40; *Foremost–McKesson*, 905 F.2d at 449.

6. The plaintiff's designated witnesses are Ambassador Robert Oakley (Ret.), Ambassador Richard Murphy (Ret.), Ambassador Thomas McNamara (Ret.), Lt. Colonel Oliver North (Ret.), and William Burns, Assistant Secretary of State for Near East Affairs. Pl.'s Resp. to Defs.' First Set of Interrogs. at 4.

7. Ambassador Oakley has both testified and been certified as an expert witness in many trials involving similar claims of terrorism brought under section 1605(a)(7). *E.g., Kerr*, 245 F.Supp.2d at 62; *Cronin*, 238 F.Supp.2d at 229; *Anderson v. Islamic Republic of Iran*, 90 F.Supp.2d 107, 112 (D.D.C.2000) (Jackson, J.). The defendants have noted that if the case proceeds to trial they will challenge what they characterize as Ambassador Oakley's opinions. Defs.' Reply at 2. At this point in the proceedings, however, they have not provided any reason not to accept Ambassador Oakley's purported testimony.

Furthermore, the plaintiff provides other similar evidence supporting his claims and allegations in his submissions. *Id.* Exs. 1, 2. Based on the evidence before the court, the plaintiff has provided sufficient proof to support his claim of jurisdiction under section 1605(a)(7) of the FSIA.[8]

#### 4. Causation

■ The defendants claim that in order for the plaintiff to establish subject-matter jurisdiction, he must also show a sufficient causal connection between the support provided by the defendants and the acts underlying the plaintiff's claims. Defs.' Mot. at 8–12. For their causation argument, the defendants rely on *Ungar v. Islamic Republic of Iran*, 211 F.Supp.2d 91 (D.D.C.2002) (Robertson, J.), a default-judgment case. However, the defendants' reliance on *Ungar* is misplaced. It is true that unlike all other cases under section 1605(a)(7), the *Ungar* court singled out the issue of causation. The *Ungar* court, however, merely assumed causation for jurisdictional purposes. *Id.* at 98–99. As the *Ungar* court itself recognized, no appellate court has determined whether causation is an issue pertaining to subject-matter jurisdiction. *Id.* at 97–98 (stating that "whether the absence of causation is a jurisdictional issue ... has not been decided by an appellate court and need not be decided here").

The court notes that the causation issue relates to the direct-support issue already discussed in part III.A.2 *supra.* Following the same line of reasoning, the court concludes here that the plaintiff does not have to show "but for" causation for jurisdic-

tional purposes. As with the direct-support issue, the defendants provide no case law definitively stating that the plaintiff must show "but for" causation to establish subject-matter jurisdiction. *See generally* Defs.' Mot.; Defs.' Reply. Nor has the court's own research unveiled any authority in that regard.

Assuming *arguendo* that the plaintiff must demonstrate "but for" causation to establish subject-matter jurisdiction, the plaintiff has clearly satisfied this additional requirement. Indeed, the plaintiff alleges that: (1) Libyan agents made it known that they wanted to purchase and murder an American hostage in retaliation for the American bombing of Tripoli and (2) the Arab Revolutionary Cells, for whom the defendants provided material support, then purchased and murdered Peter Kilburn. Compl. at 7. These allegations, if proven, would certainly show a "but for" causal link between the defendants' actions and the harm to Peter Kilburn and the plaintiff, thereby ensuring this court's subject-matter jurisdiction. Accordingly, the court denies the defendants' Rule 12(b)(1) motion to dismiss.

### B. Personal Jurisdiction

■ The FSIA provides that personal jurisdiction over a defendant exists when the plaintiff establishes an exception to immunity pursuant to 28 U.S.C. § 1605 and service of process has been accomplished pursuant to 28 U.S.C. § 1608. 28 U.S.C. § 1330(b); *Foremost–McKesson*, 905 F.2d at 442. The defendants challenge the constitutionality of this provision, while

---

**8.** While the defendants have noted that there is some confusion in the documents as to who was responsible for Peter Kilburn's hostage taking and torture, they have pointed out no discrepancies as to who was responsible for Peter Kilburn's purchase and killing in April of 1986. Defs.' Mot. at 10–12. Although there are minor discrepancies between sever-

al of the plaintiff's discovery documents, these discrepancies pertain specifically to whether Hizballah actually held Peter Kilburn prior to his sale to the Arab Revolutionary Cells, not whether the Arab Revolutionary Cells bought and killed Peter Kilburn or whether the defendants are responsible for these actions. *See* Pl.'s Opp'n Exs. 1, 2.

correctly noting that the D.C. Circuit squarely decided this issue against them in *Price II*. Defs.' Mot. at 12 (citing *Price II*, 294 F.3d at 95–100). Indeed, the D.C. Circuit held that a foreign sovereign is not a "person" within the meaning of the Fifth Amendment, and therefore is not entitled to the due-process protections of the Fifth Amendment. *Id.* Accordingly, the court concludes that it has personal jurisdiction over the defendants because the plaintiffs have established an exception to the defendants' immunity pursuant to section 1605 and because the plaintiffs have properly effected service of process on the defendants under section 1608. *Id.*; 28 U.S.C. § 1330(b); *Foremost–McKesson,* 905 F.2d at 442.

### C. Failure to State a Claim

The defendants allege that the plaintiff has failed to state a cause of action in his complaint because the Flatow Amendment does not create a cause of action against foreign sovereigns. Def. Mot. at 12–16. The defendants' Rule 12(b)(6) motion fails on two grounds. First, the plaintiffs rely on common-law causes of action for their substantive claims against the defendants. Compl. at 10–19. Second, the Flatow Amendment does provide a cause of action against foreign states.[9]

#### 1. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests. FED. R. CIV. P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. FED. R. CIV. P. 12(b)(6); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The plaintiff need not plead the elements of a prima-facie case in the complaint. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (holding that a plaintiff in an employment-discrimination case need not establish her prima-facie case in the complaint); *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114 (D.C.Cir.2000). Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. District of Columbia,* 73 F.3d 418, 422 (D.C.Cir.1996).

In deciding such a motion, the court must accept all of the complaint's well-pled factual allegations as true and draw all reasonable inferences in the nonmovant's favor. *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. The court need not accept as true legal conclusions cast as factual allegations. *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994).

#### 2. Cause of Action Based on Common Law

A plaintiff bringing suit under section 1605(a)(7) may base his claim on conventional common-law torts such as assault, battery, and intentional infliction of emotional distress. *Stern v. Islamic Republic of Iran,* 271 F.Supp.2d 286, 296–97 n. 6 (D.D.C.2003) (Lamberth, J.); *Acree v.*

---

**9.** As a point of clarification, the court notes that the plaintiff requests economic damages, loss of solatium, and punitive damages. Compl. at 16, 18–20. He cites to the Flatow Amendment only for his punitive damages claim even though all three are statutory claims arising under the Flatow Amendment. 28 U.S.C. § 1605 note; *Id.* at 19–20.

*Republic of Iraq,* 271 F.Supp.2d 179, 215 (D.D.C.2003) (Roberts, J.); *see also Stethem,* 201 F.Supp.2d at 87; *Jenco v. Islamic Republic of Iran,* 154 F.Supp.2d 27, 33–37 (D.D.C.2001) (Lamberth, J.), *aff'd, Bettis v. Islamic Republic of Iran,* 315 F.3d 325 (D.C.Cir.2003); *Sutherland v. Islamic Republic of Iran,* 151 F.Supp.2d 27, 47–50 (D.D.C.2001) (Lamberth, J.); *Anderson v. Islamic Republic of Iran,* 90 F.Supp.2d 107, 113 (D.D.C.2000) (Jackson, J.); *Cicippio v. Islamic Republic of Iran* 18 F.Supp.2d 62 (D.D.C.1998) (Jackson, J.). Neither section 1605(a)(7) nor the Flatow Amendment undermines the viability of existing federal and state common-law claims once sovereign immunity is waived. *See* 28 U.S.C. § 1605(a)(7) & note. The Flatow Amendment created a new *statutory* cause of action for certain victims of international terrorism, but did not overrule the old common law claims. *See* 28 U.S.C. § 1605 note. Indeed, none of the cases dealing with the Flatow Amendment or its corresponding legislative history suggest that Congress intended the Flatow Amendment to provide the *exclusive* cause of action for acts of state-sponsored terrorism. *See, e.g., Price v. Socialist People's Libyan Arab Jamahiriya,* 274 F.Supp.2d 20 (D.D.C.2003) (Lamberth, J.) ("*Price III*"); *Cronin,* 238 F.Supp.2d 222; *Flatow,* 999 F.Supp. 1. The plaintiff's common-law claims must therefore co-exist alongside the federal statutory cause of action granted under the Flatow Amendment.

The D.C. Circuit recently cautioned district courts about the use of "federal common law" in FSIA cases. *Bettis,* 315 F.3d 325, 333 (D.C.Cir.2003). Because the FSIA provides that "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances," it in effect instructs the court "to find the relevant law, not to make it." *Id.* (quoting 28 U.S.C. § 1606). The D.C. Circuit reasoned that the court could look to the common law of the States to determine the meaning of a cause of action, one example being a claim for intentional infliction of emotional distress. *Id.* Four months later, the D.C. Circuit held that "a non-immune foreign state is subject under the FSIA to federal common law for determining the amount of damages a plaintiff can recover." *Hill v. Republic of Iraq,* 328 F.3d 680, 684 (D.C.Cir. 2003). This combined line of reasoning leads the court to believe that the D.C. Circuit is cautioning courts not to create new federal common-law claims for use against foreign sovereigns while at the same time condoning the use of pre-existing common-law claims. *Id.; Bettis,* 315 F.3d at 333.

Here, the plaintiff's complaint names the preexisting common-law claims of wrongful death, battery, assault, false imprisonment, slave trafficking, and intentional infliction of emotional distress. Compl. at. 10–18. Thus, based on the D.C. Circuit's recent reasoning, the court allows the plaintiff's claims against the defendants. Accordingly, the court denies the defendants' Rule 12(b)(6) motion to dismiss as to these claims.

### 3. The Flatow Amendment Creates a Cause of Action Against Foreign Sovereign States

■ To create a cause of action for victims of state-sponsored terrorist acts, Congress enacted the Flatow Amendment, providing that

> an official employee, or agent of a foreign state designated as a state sponsor of terrorism ... while acting within the scope of his or her office, employment, or agency shall be liable to a United States national ... for personal injury or death caused by acts of that official, employee, or agent for which the court

of the United States may maintain jurisdiction under section 1605(a)(7). 28 U.S.C. § 1605 note. The Flatow Amendment thus clearly establishes a cause of action against an "official, employee, or agent" of a foreign state that commits or causes another to commit a terrorist act. *Id.; Flatow,* 999 F.Supp. at 12–13; *Elahi,* 124 F.Supp.2d at 106. It is not as clear from the text of the Flatow Amendment, however, that victims of state-sponsored terrorist acts also have a cause of action against the foreign state itself. *Roeder v. Islamic Republic of Iran,* 333 F.3d 228, 234–35 (D.C.Cir.2003) ("*Roeder II*"); *Bettis,* 315 F.3d at 330; *Price II,* 294 F.3d at 87 (recognizing that "the amendment does not list 'foreign states' among the parties against whom such an action may be brought"). In *Price II,* the D.C. Circuit flagged the issue for the district court's consideration. *Price II,* 294 F.3d at 87. This court adopts the reasoning of Judge Lamberth in *Price III* and *Cronin* in reaching the conclusion that the Flatow Amendment does provide victims of state-sponsored acts of terrorism with a cause of action against the culpable foreign state. *Price III,* 274 F.Supp.2d at 25–32, 2003 WL 21694572 at *5–12; *Cronin,* 238 F.Supp.2d at 230–33.

Before reaching this conclusion, however, it is necessary for the court to address the history of the Flatow Amendment. During the 1990s, Congress grew increasingly frustrated with the federal courts for having dismissed a number of actions brought by American victims of abuse by foreign nations for want of subject-matter jurisdiction. *Price III,* 274 F.Supp.2d at 26, 2003 WL 21694572 at *6. In 1996, Congress addressed this trend by including within the AEDPA an amendment to the FSIA. *Price III,* 274 F.Supp.2d 26,

2003 WL 21694572 at *6. This amendment created a new exception to immunity from suit under the FSIA for any foreign nation that the State Department designates as a sponsor of terrorism if that nation either commits a terrorist act resulting in the death or personal injury of a United States national or provides material support and resources to an individual or entity that commits such a terrorist act. *Id.* at 26, 2003 WL 21694572 at *6; 28 U.S.C. § 1605(a)(7).

Several months later, Congress enacted the Flatow Amendment creating a cause of action for state-sponsored terrorism. *Price III,* 274 F.Supp.2d at 26–27, 2003 WL 21694572 at *6–7. In the *Flatow* case, Judge Lamberth found that while the Flatow Amendment appears to be an independent pronouncement of law, Congress published it as a note to 28 U.S.C. § 1605. *Flatow,* 999 F.Supp. at 12. Furthermore, he noted that the Flatow Amendment requires that several references be made to section 1605(a)(7) for its interpretation. *Id.* Therefore, Judge Lamberth deduced that the court should construe the Flatow Amendment *in pari materia* with the state-sponsored terrorism exception to the FSIA. *Id.* at 13 (explaining that "[t]he amendment should be considered to relate back to the enactment of 28 U.S.C. § 1605(a)(7) as if they had been enacted as one provision ... and the two provisions should be construed together and in reference to one another"(internal citations omitted)); *Price III,* 274 F.Supp.2d at 27, 2003 WL 21694572 at *7; *Stern,* 271 F.Supp.2d at 296, 297 n. 6; *Elahi,* 124 F.Supp.2d at 106. Accordingly, because the Flatow Amendment is unclear as to whether it creates such a cause of action, it is necessary for courts to explain the manner in which it should be construed.[10]

---

10. The only legislative history of the Flatow

Amendment which this court has located con-

*Price III,* 274 F.Supp.2d at 27, 2003 WL 21694572 at *7. There is a combination of six fundamental reasons justifying the conclusion that the Flatow Amendment creates a cause of action against designated foreign states as spelled out in *Cronin* and *Price III. Id.; Cronin,* 238 F.Supp.2d at 230–33.

First, precedent from this circuit has consistently interpreted the Flatow Amendment to provide a cause of action against foreign states for any act that would provide a court with jurisdiction under 28 U.S.C. § 1605(a)(7). Holding the same here, this court falls in line with the overwhelming consensus on the issue. *E.g., Price III,* 274 F.Supp.2d 20; *Stern,* 271 F.Supp.2d 286; *Acree,* 271 F.Supp.2d 179; *Peterson v. Islamic Republic of Iran,* 264 F.Supp.2d 46 (D.D.C.2003) (Lamberth, J.); *Kerr v. Islamic Republic of Iran,* 245 F.Supp.2d 59 (D.D.C.); *Cronin,* 238 F.Supp.2d 222; *Surette,* 231 F.Supp.2d 260; *Stethem,* 201 F.Supp.2d 78; *Weinstein v. Islamic Republic of Iran,* 184 F.Supp.2d 13 (D.D.C.2002) (Lamberth, J.); *Hill v. Republic of Iraq,* 175 F.Supp.2d 36 (D.D.C.2001) (Jackson, J.), *rev'd on other grounds,* 328 F.3d 680 (D.C.Cir.2003); *Wagner v. Islamic Republic of Iran,* 172 F.Supp.2d 128 (D.D.C.2001); *Mousa,* 238 F.Supp.2d 1; *Polhill v. Islamic Republic of Iran,* 2001 U.S. Dist. LEXIS 15322 (D.D.C. Aug, 23, 2001) (Jackson, J.); *Jenco,* 154 F.Supp.2d 27; *Sutherland,* 151 F.Supp.2d 27; *Daliberti,* 146 F.Supp.2d 19; *Elahi,* 124 F.Supp.2d at 106; *Higgins,* 2000 WL 33674311, 2000 U.S. Dist. LEXIS 22173; *Eisenfeld v. Islamic Republic of Iran,* 172 F.Supp.2d 1 (D.D.C.2000);

*Anderson,* 90 F.Supp.2d 107; *Flatow,* 999 F.Supp. 1; *but see Roeder v. Islamic Republic of Iran,* 195 F.Supp.2d 140, 171–73 (D.D.C.2002) (Sullivan, J.) (*"Roeder I"*).

The defendants cite *Roeder I* as an apparent exception to this line of authority. *Roeder I,* however, did not conclude that the Flatow Amendment fails to provide a cause of action against foreign states. *Price III,* 274 F.Supp.2d at 27, 2003 WL 21694572, at *7 (distinguishing *Roeder I* as not conclusive on this question). Instead, the court in *Roeder I* merely recognized that the Flatow Amendment was facially ambiguous on the issue, and it did so in order to avoid reaching a number of difficult constitutional questions.[11] *Id.* Thus, the holding in *Roeder I* is probably best understood as a decision to avoid confronting serious constitutional issues unnecessarily. *Id.* at 29, 2002 WL 572100 at *9. Indeed, *Roeder I* stresses the limited scope of its holding, noting that the court was only attempting to determine " 'whether the statute relied upon by plaintiffs is unambiguous on its face' " in creating a cause of action against foreign states. *Id.* (quoting *Roeder I,* 195 F.Supp.2d at 174). Contrary to the defendants' suggestion, *Roeder I* does not conflict with the previous decisions in this circuit, thereby not tampering with the firmly-rooted principle that the 1996 amendments to the FSIA, when read together, permit a cause of action to lie against foreign states for victims of state-sponsored acts of terrorism. *Id.* at 30, 2003 WL 21694572 at *10.

---

sists of the following two sentences in the House conference report: "The conference agreement inserts language expanding the scope of monetary damage awards available to American victims of international terrorism. The conferees intend that this section shall apply to cases pending upon enactment

of this Act." H.R. Conf. Rep. 104–863, at 985 (1996).

11. For a further clarification of *Roeder I* and its application to these cases, see Judge Lamberth's decision in *Price III,* 274 F.Supp.2d at 27–30, 2003 WL 21694572, at *7–10.

Second, when read in conjunction with the text of section 1605(a)(7), the text of the Flatow Amendment suggests that a private cause of action against a foreign state for sponsoring acts of terrorism is proper. *Compare* 28 U.S.C. § 1605(a)(7) *with* § 1605 note; *see also Price III,* 274 F.Supp.2d at 30, 2003 WL 21694572 at *10; *Cronin,* 238 F.Supp.2d at 231. Most notably, "the operative language of 28 U.S.C. § 1605(a)(7) parallels the definition of *respondeat superior*: an employer is liable in some cases for damages 'proximately resulting from acts of [an] employee done within [the] scope of his employment in the employer's service." [12] *Price III,* 274 F.Supp.2d 30, 2003 WL 21694572 at *10 (emphasis added); *Cronin,* 238 F.Supp.2d at 231 (quoting *Flatow,* 999 F.Supp. at 26). Thus, section 1605(a)(7) abrogates the foreign state's sovereign immunity if its "official, employee, or agent" provides material resources to the entity that commits the terrorist act. *Price III,* 274 F.Supp.2d 31, 2003 WL 21694572, at *11; *Cronin,* 238 F.Supp.2d at 231. Likewise, the Flatow Amendment states that an "official, employee, or agent" of a foreign state shall be liable if their actions were taken "while acting *within the scope* of his or her office, employment, or agency[.]" 28 U.S.C. § 1605 note (emphasis added). *Price III,* 274 F.Supp.2d at 31, 2003 WL 21694572, at *11; *Cronin,* 238 F.Supp.2d at 231. Accordingly, the *respondeat superior* implications of section 1605(a)(7) are equally applicable to the Flatow Amendment. *Id.* This end is further supported by a reading of *Flatow,* where the court opined that "the state sponsored terrorism exception to immunity and the Flatow Amendment similarly employ the principles of *respondeat superior* and command responsibility

to create both subject matter jurisdiction and a federal cause of action." *Flatow,* 999 F.Supp. at 26; *see also Cronin,* 238 F.Supp.2d at 231–32. Moreover, by referring to officials, employees, and agents of a foreign state, the Flatow Amendment makes clear that they, in addition to the foreign state itself, can be held liable for providing material support to groups that perform terrorist acts. *Cronin,* 238 F.Supp.2d at 232; *see also, e.g., Flatow,* 999 F.Supp. at 24–25 (noting that the Flatow Amendment "overrides the common law doctrine of head of state immunity[.]"). Thus, when viewed in context, the omission of "foreign state" from the Flatow Amendment is the beginning, rather than the end, of the inquiry. *Cronin,* 238 F.Supp.2d at 232. Finally, for the court to adopt the defendants' interpretation of the text of the Flatow Amendment so as to deny a cause of action against a foreign state, such as defendant Libya, would run afoul of Congress's intentions and turn the scheme of section 1605(a)(7) on its head. *Id.; Price III,* 274 F.Supp.2d at 31, 2003 WL 21694572, at *11. One has to wonder why Congress would obviate a foreign state's immunity for specific terrorist acts and then, within a few months and during the same congressional session, create a private cause of action for those same terrorist acts, this time using the same language to prohibit that cause of action's application against a foreign state. *See id.* Indeed, such a scenario would defy reason. Therefore, the court declines the defendants' invitation to use the express language of the Flatow Amendment, which mirrors the language of section 1605(a)(7), to deny victims of state-sponsored terrorism a cause of action against the responsi-

---

**12.** As discussed *supra,* section 1605(a)(7) provides for a foreign state's liability "if such act or provision of material resources is engaged in by an official, employee, or agent of such foreign state while acting *within the scope* of his office, employment or agency." 28 U.S.C. § 1605(a)(7) (emphasis added).

ble foreign state when that same language is used in the first instance to deny a foreign state's immunity. *Price III*, 274 F.Supp.2d at 31, 2003 WL 21694572, at *11; *Cronin*, 238 F.Supp.2d at 232.

Third, the legislative history of both section 1605(a)(7) and the Flatow Amendment support the conclusion that victims of state-sponsored acts of terrorism have a cause of action against the foreign state itself. *Price III*, 274 F.Supp.2d at 31, 2003 WL 21694572, at *11; *Cronin*, 238 F.Supp.2d at 232. "The stated purposes of the Antiterrorism Act [are] to deter terrorist acts against U.S. nationals by foreign sovereigns or their agents and to provide for justice for victims of terrorism." *Elahi*, 124 F.Supp.2d at 106 (citing the AEDPA); *see also Flatow*, 999 F.Supp. at 12–13 (noting that "[t]he brief explanation of the Flatow Amendment's purpose in the House Conference Report explicitly states that it was intended to increase the measure of damages available in suits under 28 U.S.C. § 1605(a)(7)") (citing H.R. Conf. Rep. 104–863 (1996)). The D.C. Circuit follows this line of reasoning by explaining that Congress, in enacting the Flatow Amendment, "sought to create a judicial forum for compensating the victims of terrorism," and to thereby punish and deter foreign states who have committed or sponsored such acts. *Bettis*, 315 F.3d at 329 (citing *Daliberti*, 97 F.Supp.2d at 50). Were the court to buy into the defendants' reasoning by construing the Flatow Amendment in a manner that precludes victims of terrorism from suing culpable foreign states, the court would effectively thwart both of these stated congressional intentions. *See id.* On the other hand, the purposes of the

legislation would clearly be advanced by allowing victims a cause of action against the responsible foreign state. *See id.* Indeed, to construe the Flatow Amendment differently "would mean that what Congress gave with one hand in section 1605(a)(7) it immediately took away with the other in the Flatow Amendment." *Cronin*, 238 F.Supp.2d at 232.

Fourth, relevant statutory provisions enacted after the Flatow Amendment bolster the conclusion that the Flatow Amendment gives victims of state-sponsored acts of terrorism a cause of action against the responsible foreign state. *Id.; Price III*, 274 F.Supp.2d at 31, 2003 WL 21694572, at *11. For example, the Victims of Trafficking and Violence Protection Act of 2000 ("Victims Protection Act") provides an avenue for successful plaintiffs to recover damages awards against foreign states and their agents from the United States government. Pub.L. No. 106–386, 114 Stat. 1464 (2000). "It is inconceivable that Congress would enable plaintiffs who obtained judgments against foreign states ... to recover ... damage awards from the United States if ... plaintiffs did not have a cause of action against the foreign state in the first place."[13] *Cronin*, 238 F.Supp.2d at 232. Moreover, the legislative history of the Victims Protection Act indicates that Congress presumes that the 1996 changes to the FSIA confer a private right of action against foreign states. *Id.* at 232–33; *see also* H.R. Conf. Rep. 106–939 (2000), U.S.Code Cong. & Admin.News 2000, p. 1380 (stating that the 1996 amendments allowed "American citizens injured or killed in acts of terrorism (or their survivors) to bring a lawsuit against the terrorist state responsible for that act"); 146 Cong. Rec. S10164–02 (recognizing

---

13. The Victims Protection Act explicitly mentions such a foreign state, Iran. Pub.L. No. 106–386, 114 Stat. 1464 (2000); *Flatow v.*

*Islamic Republic of Iran*, 305 F.3d 1249, 1251 (D.C.Cir.2002).

that the 1996 amendments "gave American victims of state-sponsored terrorism the right to sue the responsible state"). In addition, Congress amended the FSIA in 1998 to permit victims to recover punitive damages against foreign states in actions brought pursuant to section 1605(a)(7). Pub.L. No. 105–277, 112 Stat. 2681 (1998).[14] "It seems highly unlikely that Congress would amend [the FSIA] to specifically permit punitive damage awards against foreign states under § 1605(a)(7) if a cause of action did not exist against those states." *Cronin,* 238 F.Supp.2d at 233. The existence of a cause of action under the Flatow Amendment is further supported by the fact that Congress has since repealed the amendment regarding punitive damages, whereby such repeal would prove unnecessary if there were no cause of action against a foreign state in the first place. *Cronin,* 238 F.Supp.2d at 233; *Elahi,* 124 F.Supp.2d at 113–14 n. 17 (citing Pub.L. No. 106–386, § 2002). *Cronin,* 238 F.Supp.2d at 233.

Fifth, the United States has not intervened in FSIA actions against foreign states and attempted to dismiss them on the grounds that the FSIA does not provide a cause of action against foreign states.[15] *Price III,* 274 F.Supp.2d at 21, 2003 WL 21694572, at *1. Nor has the United States filed a statement of interest to that effect in any pending action, even though it is authorized by statute to do so. *Id.* at 31–32, 2003 WL 21694572, at *11–12; *see also* 28 U.S.C. § 517 (providing that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to ... attend to the interests of the United States in a suit pending in a court of the United States").

Sixth, the only other circuit to have addressed this issue has similarly held that the Flatow Amendment provides a cause of action against foreign states. *Smith v. Islamic Emirate of Afghanistan,* 262 F.Supp.2d 217, 228 (S.D.N.Y.2003) (explaining that "enactments subsequent to the Flatow Amendment ... imply that it does reach foreign states" and that "the better view ... is that the Flatow Amendment likely provides a cause of action against a foreign state"); *see also Price III,* 274 F.Supp.2d at 32, 2003 WL 21694572, at *12 (citing *Smith,* 262 F.Supp.2d 217).

For all of these reasons, the court denies the defendants' Rule 12(b)(6) motion to dismiss by determining that the plaintiff's complaint has sufficiently stated claims for relief. FED. R. CIV. P. 12(b)(6); *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229; *Atchinson,* 73 F.3d at 422.

### 4. Punitive Damages Under the Flatow Amendment

As a final point, the court addresses the question of whether the plaintiff may assert a claim for punitive damages against defendant LESO under the Flatow Amendment, which is separate from the plaintiff's other damages claims against both defendants. Specifically, the question facing the court is whether the plaintiff may sustain a claim for punitive damages against the security agency of a foreign sovereign, i.e., defendant LESO.

---

**14.** The statute, as amended, reads "[a] foreign state except an agency or instrumentality thereof shall not be liable for punitive damages, except any action under section 1605(a)(7)." 28 U.S.C. § 1606.

**15.** Although the United States government did intervene in *Roeder I,* its reason for intervention was to protect its interests under the Algiers Accords, which contain a prohibition on lawsuits arising out of the hostage taking at issue in *Roeder I. Roeder I,* 195 F.Supp.2d at 144.

To answer this question, the court first looks to the evolution of this area of law. When Congress enacted the FSIA in 1976, it included in section 1603(b) a definition of an "agency or instrumentality" of a foreign state. 28 U.S.C. § 1603(b). Congress also included a section providing that a foreign state itself could not be held liable for punitive damages, but that an agency or instrumentality thereof could. 28 U.S.C. § 1606. When the Flatow Amendment came to full fruition in 1996, it allowed plaintiffs to recover punitive damages against "officials, employees, and agents" of the foreign state. 28 U.S.C. § 1605 note. The *Flatow* case, decided in 1998, was the first in a long line of FSIA cases to use the Flatow Amendment to assess punitive damages against an agency of a foreign state. *Flatow*, 999 F.Supp. at 25–27. In *Flatow*, the court found that the definition of an "agent" is not limited to an individual, but also could include agencies. *Id.* at 26. The court reasoned that a foreign state's security agency qualifies as an "agency or instrumentality" under section 1603(b)'s definition.[16] *Id.* at 34 (awarding $225 million, or three times Iran's annual expenditure on terrorism, in punitive damages). *Flatow* set the precedent for cases awarding punitive damages against a security agency of a foreign state. *Stern*, 271 F.Supp.2d 286, at 300, 301, 2003 U.S. Dist. LEXIS 12572, at *41–44; *Acree*, 271 F.Supp.2d 179, 223–24; *Cronin*, 238 F.Supp.2d at 235–36; *Surette*, 231 F.Supp.2d at 273–74; *Stethem*, 201 F.Supp.2d at 92–93; *Weinstein*, 184 F.Supp.2d at 25–26; *Wagner*, 172 F.Supp.2d at 137–38; *Mousa*, 238 F.Supp.2d at 6; *Polhill*, 2001 U.S. Dist. LEXIS 15322, at *16–17; *Jenco*, 154 F.Supp.2d at 38–40; *Sutherland*, 151 F.Supp.2d at 52–53; *Elahi*, 124 F.Supp.2d at 113–14; *Higgins*, 2000 WL 33674311, at *8, 9, 2000 U.S. Dist. LEXIS 22173, at *23–25; *Eisenfeld*, 172 F.Supp.2d at 9; *Anderson*, 90 F.Supp.2d at 114.

Presumably aware of this development in the case law, in 1998 Congress amended the FSIA on the very issue of punitive damages under section 1605(a)(7). Pub.L. No. 105–277, 112 Stat. 2681 (1998). Further illustrating its acute awareness of the courts' interpretation, Congress repealed this amendment two years later in 2000. Pub.L. No. 106–386, § 2002(g). At neither point did Congress take steps to alter the courts' interpretation authorizing punitive damages against foreign states' security agencies. Moreover, in 2001, Congress amended section 1605(a)(7) to allow a cause of action in a specific case pending before another member of this court, leaving no room to question that Congress is aware of the courts' actions.[17] Pub.L. No. 107–77, § 626(c).

Notwithstanding the long line of cases in this circuit holding that a foreign state's security agency comes under the definition of an "agency or instrumentality," the D.C. Circuit recently advanced a new method of

---

**16.** Section 1603(b) provides that

> [a]n 'agency or instrumentality of a foreign state' means any entity—(1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d)

of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b).

**17.** As an example of how closely Congress monitors the pulse of this area of law, the amendment actually referred to the docket number of the case at issue, and once Congress discovered that it incorrectly stated that case's docket number, Congress amended its oversight to include the cases's correct docket number. Pub.L. 107–117, Div. B, § 208.

determining whether an organ of a foreign state is part of the foreign state itself or qualifies as an "agency or instrumentality" of the foreign state. *Roeder II,* 333 F.3d at 234. In doing so, the D.C. Circuit established a categorical approach to defining entities: "if the core functions of the entity are governmental, it is considered the foreign state itself; if commercial, the entity is an agency or instrumentality of the foreign state." *Id.* Applying this categorical approach, the court noted that Iran's Ministry of Foreign Affairs has a core governmental function, and thus, "must be treated as the state of Iran itself rather than its agent." *Id.*

In the instant case, if the court were to strictly apply this categorical approach, the result undoubtedly would be the court's denial of the plaintiff's punitive damages claim against defendant LESO. In fact, if the D.C. Circuit intended this approach to apply across-the-board in all FSIA cases, then the vast number of cases allowing for such punitive damages claims would be called into question or flatly reversed, even where judgments have been entered and collection efforts on these judgments have been or are being advanced. *E.g., Cronin,* 238 F.Supp.2d 222. Thus, the court is put in a quandary.

Faced with this dilemma, the court has the option of simply applying the categorical approach advanced by the D.C. Circuit in *Roeder II,* turning a blind eye to the effects. *Roeder II,* 333 F.3d at 234. The court does not question the D.C. Circuit's reasoning, but attempts to reconcile these inapposite results. In doing so, it seems important to place the D.C. Circuit's rea-

soning in its proper context. Reluctant to take any liberties in interpreting the higher court's decision in a fashion that disregards its true meaning, the court simply notes that the ruling in *Roeder II* was not dependant on its resolving the issue at bar. There is support for this limited-effect interpretation found in the D.C. Circuit's opinion. Indeed, the D.C. Circuit frames its discussion of defining a foreign state as a "preliminary issue" and ends that discussion by declaring that "this brings us to the principal issue." *Id.* Demarcated as such, this court infers that the reasoning is dicta and therefore has little if no impact on the issue at bar. This interpretation may especially be merited given that a strict application of the categorical approach would lead to a fundamental shift in jurisprudence and a complete divorce from *stare decisis. E.g., Acree,* 271 F.Supp.2d 179; *Cronin,* 238 F.Supp.2d 222.

Another reason to avoid strict application of this dictum is that this court is not vested with such heightened discretion so as to change the tide of uniform rulings that sustain such punitive damages claims. As noted, the courts have consistently awarded punitive damages and these decisions have stood for years without any effort by Congress to question their interpretation or provide a different effect.[18] *E.g., Acree,* 271 F.Supp.2d 179, 223–24 (awarding punitive damages against the Iraqi Intelligence Service); *Flatow,* 999 F.Supp. at 32–34; (citations omitted). Such lack of congressional action is reason enough not to break rank with this established line of precedent. *See United*

---

**18.** If Congress wanted to change the court's interpretation, it certainly has had the opportunity to do so. In fact, almost every year since the passage of section 1605(a)(7) in 1996, Congress has enacted an amendment relating to that section. Amendments to section 1605(a)(7): Pub.L. No. 107–77, Div. B,

§ 208 (2002); Pub.L. No. 107–77, § 626(c) (2001); Pub.L. No. 105–11, § 1 (1997); Pub.L. No. 104–132, § 221(a)(1) (1996); Amendments to section 1606 regarding punitive damages: Pub.L. No. 105–277, Div. A, § 101(h) [Title I, § 117(b)] (1998); Pub.L. No. 106–386, § 2002(g) (2000).

**44**

*States v. Hart,* 324 F.3d 740, 746 (D.C.Cir. 2003) (holding that an interpretation of a United States Sentencing Guideline "has stood for nearly ten years without any effort by the Sentencing Commission—despite multiple amendments of other Guidelines provisions—to amend the provision to a different effect; this is reason enough not to break rank with our sister courts") (citation omitted).

Therefore, the court decides not to strictly apply the categorical approach, thereby sustaining the plaintiff's claim for punitive damages against defendant LESO. Accordingly, the court denies the defendants' Rule 12(b)(6) motion to dismiss on this basis as well. FED. R. CIV. P. 12(b)(6); *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229; *Atchinson,* 73 F.3d at 422.

### IV. CONCLUSION

For the foregoing reasons, the court denies the defendants' motion to dismiss. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of August 2003.